(119 App. Div. 464)

WALTERS v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   May 3, 1907.)

1. Municipal Corporations—Officers—Compensation.

The removal of a Civil War veteran and veteran fireman, who was an officer of the city of New York of the fifth grade, employed as a clerk in the department of finance at a salary of $1,800 a year, effected by a reduction of his salary by the board of estimate and apportionment of the city to $1,500, which was the salary fixed for officers of the fourth grade, must be regarded as valid until set aside.

2. Same—Action for Salary—Vacation of Removal.

Where plaintiff, an officer of the city of New York of the fifth grade, claimed that he was removed illegally to a position of the fourth grade by a reduction of his salary by the board of estimate and apportionment, the burden was on him, in an action against the city to recover the difference between the amount received by him and the amount he would have received if the salary had not been reduced, to show that he was entitled to a position of the fifth grade, and that his removal had been set aside or he had been reinstated.

3. Same—Right to Position—Establishment—Action for Salary.

Where a municipal employé's salary was reduced by the board of estimate and apportionment, and he claimed that such reduction operated to remove him from a position of the fifth to a position in the fourth grade of the classified civil service, he could not establish his right to a position of the fifth grade in a suit against the city to recover the amount of the reduction of his salary.

**4. SAME—SERVICES—CERTIORARI—MANDAMUS—STATUTES.**

Where plaintiff, a veteran, was employed as a clerk of the fifth grade in the classified service of the city of New York, and his salary was reduced by the board of estimate and apportionment from $1,800 to $1,500 a year, which plaintiff claimed illegally transferred him to the fourth grade of classified employés, plaintiff, though continuing to perform the same duties as before, was nevertheless entitled to mandamus or certiorari as an absolute right to compel his reinstatement as a clerk of the fifth grade at a salary of $1,800, as expressly provided by Laws 1899, p. 809. c. 370, § 21, as amended by Laws 1902, p. 804, c. 270, and Laws 1904, p. 1694, c. 697.

**5. SAME—REDUCED SALARY—DE FACTO OFFICERS.**

The rule that the right to an office must be shown to have been determined in favor of plaintiff before he can sue for incidental salary is not limited to cases where there has been a de facto incumbent and payments have been made to him, but also applies where plaintiff's salary was reduced and he performed the same services as an employé of the lower grade.

**6. SAME—ACTION FOR SALARY—FINDINGS.**

Plaintiff, a veteran civil service employé of the fifth grade, was changed by a reduction of his salary to an employé of the fourth grade, without an opportunity to explain, and, after performing the same services, sued to recover the amount of the reduction of his salary, the complaint definitely alleging wherein the reduction of such salary was illegal, but did not allege that the change in salary merely marked a transfer of plaintiff from one grade to another in violation of the civil service regulations. *Held,* that the court would not supply a finding that such was the effect of the change of salary in support of a judgment for plaintiff for the amount of the reduction of salary.

Appeal from Special Term.

Action by George W. Walters against the city of New York. From a judgment of the Special Term in favor of plaintiff, defendant appeals. Reversed and remanded.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, MILLER, and GAYNOR, JJ.

Theodore Connoly (William B. Crowell, on the brief), for appellant. R. Percy Chittenden, for respondent.

JENKS, J. The plaintiff was a clerk in the department of finance of the city of New York at a yearly salary of $1,800. On April 30, 1902, the board of estimate and apportionment of the city by resolution of a general scheme fixed the salary at $1,500. The plaintiff remained as a clerk in the department, discharged the same duties, and accepted the salary as thus reduced, receipting for it under protest. He has recovered a judgment against the city for the difference between these salaries. The action of the board of estimate and apportionment was pursuant to the charter (section 10 of chapter 466 of the Laws of 1901, as amended by chapter 436, p. 1068, of the Laws of 1902) and under a provision described by the first division of this court (per Clarke, J., in Hamburger v. Board of Estimate, 109 App. Div. 427, 96 N. Y. Supp. 130, appeal dismissed 184 N. Y. 577, 77 N. E. 1188) "as broad a grant of power as human language could frame." I have no doubt that this power to fix salaries, and hence to reduce them, was duly conferred upon that board. The legality of its action is challenged on the sole ground that the effect thereof was to remove the

plaintiff summarily in violation of his rights as a veteran of the late Civil War and of a volunteer fire department. The assertion of removal rests upon the proposition that this reduction of the salary ipso facto transferred the plaintiff from the fifth grade of clerks to the fourth grade of clerks in the classification of such employés made by the municipal civil service commission. If there were any removal at all, it was technical to the last degree, as the position was continued and the plaintiff remained in it to the discharge of the same duties. It is not asserted that the municipal civil service commission was clothed with any direct power in the premises; but the proposition necessarily is that, as the action of the board of estimate incidentally changes the class of the clerk as arranged by the civil service commission, such action is illegal, in that it worked an illegal removal. If the proposition be sound, then the classification of the municipal civil service commission is a check upon the broad powers conferred in express terms upon the board of estimate to regulate and incidentally to reduce this compensation. If the question were entirely open, I should not hesitate to conclude that such a classification could not thus hinder the board of estimate and apportionment, for thereby the civil service commission would be vested with powers wholly foreign to its function, and not properly devolved upon it. The civil service system and the machinery of its working exist to open the public service to competent men ascertained by tests, common generally to all applicants, to retain in that service efficient and faithful public servants, and to promote them according to their merits. Classification is an orderly detail. It is made to limit and to define the examinations, and to segregate like employés, and to restrict and to regulate promotion. I have no doubt that a classification upon the basis of maximum and minimum compensation works well, and that it makes for the observance and the enforcement of the civil service law; but that is not the question. The practical question in this case is whether the civil service commission by its rule for such classification can prevent the board of estimate and apportionment under this statute from reducing the salary of a municipal employé below the minimum of his grade in any case where the employé cannot be summarily removed from his position. If the commission can thus check the board of estimate, it in effect possesses an administrative or legislative power (People ex rel. Trustees et al. v. Board of Supervisors of Queens Co., 131 N. Y. 468, 30 N. E. 488; People ex rel. Smith v. Trustees, 23 App. Div. 231, 48 N. Y. Supp. 740) wholly foreign to the system or principle which it represents. The board of estimate and apportionment naturally could be vested with the matter of municipal ways and means, and be empowered, in the work of appropriation and as incidental thereto, with the adjustment of the pay of the various municipal employés, but the civil service commission has no concern with such questions, and to clothe it with power of indirect visitation or indirect veto over the board of estimate is to assign it a function in the municipal machinery foreign to its office. See Powell v. City of New York, 65 App. Div. 421, 72 N. Y. Supp. 990; People ex rel. Havron v. Dalton, 85 App. Div. 110, 83 N. Y. Supp. 321. Neither section 10 nor 15 of chapter 370 (pages 799, 805) of the Laws of 1899 confers any such

controlling power of classification, directly or by implication. Of course, it may be said that, if the plaintiff was transferred by the reduction from the fifth to the fourth grade, he might thereby lose his opportunity of promotion to the sixth grade. But, even if this were so, that consideration should not make to hamper the board of estimate in the formulation of a scheme or schedule presumably made with a view to the city's means and the various claims upon it. But I do not feel that I am entirely free to reach the conclusion that the plaintiff cannot assert that he was removed. That question must be settled by the highest court of this state, and whatever I have heretofore said is with due deference to its expressions in Matter of Shepard v. Oakley, 181 N. Y. 339, 74 N. E. 227. In that case it seems that the board of estimate in April, 1902, fixed Shepard's salary at $1,-500, and the court say:

"In the absence of specific information as to the character of the duties actually performed by the petitioner through the various mutations of his career from 1899 to 1904, it may fairly be assumed that the reduction of his salary was in legal effect a removal from the higher grade and salary to a lower grade and salary. People ex rel. Callahan v. Board of Education, 174 N. Y. 169, 66 N. E. 674. If this was the legal effect of the change imposed upon the petitioner, then it was the legal duty of the respondent to have given the petitioner a hearing and an opportunity to explain before he was removed. Charter Greater New York, Laws of 1901, p. 636, c. 466, § 1543."

It is true that the following paragraph shows that the learned counsel for the city in that case conceded that such would be the effect of the reduction, and therefore I may assume that the court did not examine the question in the light of a controversy, but none the less the court by its utterance quoted gave at least an intimation, which I cannot properly disregard. For this reason, I shall discuss the case on the theory of its disposition by the learned trial court.

The plaintiff's theory is that he had a right to the position at a salary of $1,800 a year and that his relation to that position is stated in the language of the prevailing opinion in O'Hara v. City of New York, 46 App. Div. 518, 62 N. Y. Supp. 146, where Rumsey, J., says:

"And, so long as his right to the position existed, we think the rule should be applied which has come to be recognized in cases of this kind, that the right to the salary is an incident of the position from which one is irremovable, and as long as the position exists the right to the salary remains."

This case was affirmed on the opinion below. 167 N. Y. 567, 60 N. E. 1117. See, too, Martin v. City of New York, 82 App.. Div. 35, 81 N. Y. Supp. 412, affirmed 176 N. Y. 371, 68 N. E. 640. In other words, the plaintiff insists that the position is at least analogous to an office, and that his status was not that of a mere employé under a contract for service. And so he sues, complaining first, that the position was that of a general clerk in the competitive class, that he was a veteran of the late Civil War and of the volunteer fire force of the late city of Brooklyn, that the statute under which the board of estimate and apportionment acted was invalid and unconstitutional, and that he received the salary of $1,500 under protest; and, second, that such reduction of salary worked a removal from the grade and position to which he was appointed, and that the removal was in violation of section 1543 of the Greater New York charter, in that no

notice of such reduction was given to him and no opportunity of a hearing was afforded to him. He alleges that there is due to him the amount of difference of the salaries. The answer is a general denial. At trial the plaintiff stated that the constitutionality of the statute under which the board of estimate and apportionment acted was not questioned. The learned Special Term found that the plaintiff was a regular clerk at the time of the said action of the board of estimate and apportionment, and had a position under the civil service rules then in force in the classified municipal civil service, subject to competitive examination, and was graded by said rules in the fifth grade, with an annual compensation of $1,800; that he was a veteran as alleged in the complaint; that the said board reduced the salary as stated without giving the plaintiff an opportunity for explanation, and that the true grounds of said reduction were not forthwith entered in the records of the department, nor was a copy filed with the municipal civl service commission; that the plaintiff protested, and had not waived his rights. It found as a conclusion of law that the reduction of salary was a removal from the fifth grade, a higher grade in salary, to the fourth grade, a lower grade in salary; that the board of estimate and apportionment should have given the plaintiff an opportunity to explain before he was removed; that said reduction and removal were in violation of section 1543 of the Greater New York charter; that the reduction and removal of the plaintiff, a veteran of the Civil War, and of the said volunteer fire service, were in violation of section 127 of the said charter; that there had been no waiver of the right to recover; and that he was entitled to judgment "for $900, being $300 a year from May 1, 1902, until the commencement of this action." The defendant filed exceptions to the findings and conclusions.

The removal must be regarded as valid until set aside. People v. Board of Police, 39 N. Y. 506, 519; Van Valkenburgh v. Mayor, 49 App. Div. 208, 63 N. Y. Supp. 6. Of course, if plaintiff was removed, he was out of the position. As the action is to recover a salary as incidental to a position, I think that the plaintiff was bound to show that he was entitled to the position. He failed to show that the removal was ever set aside, or that he was reinstated. He could not establish his right to the position in the suit to recover this salary, but his right should have been established in some direct proceeding. Throop on Public Officers, § 510, says:

"An officer of a city wrongfully removed or discharged before the end of his term cannot maintain an action for his salary against the city for the time subsequent to his removal or discharge, but must proceed by mandamus, certiorari, or otherwise to procure himself to be reinstated;" citing authorities.

In McManus v. City of Brooklyn (City Ct.) 5 N. Y. Supp. 424, the court, per Clement, C. J., say:

"The rule in this state is that an officer who is illegally kept out of his office cannot recover the salary of the state or municipality until there has been a judicial determination establishing his right to the office, and then he is entitled to recover the salary during the time he was prevented from performing the service, unless the same has been paid to an officer de facto performing the duties."

McManus's Case, supra, was affirmed sub nomine Hagan v. City of Brooklyn, which was decided on the authority of the former case (5 N. Y. Supp. 426) in 126 N. Y. 643, 27 N. E. 265, and in its memorandum of opinion the court say:

"We think that, under the authorities, this action cannot be supported. The rule deducible from an examination of the various cases on the subject in this state is to the effect that a public officer, unlawfully removed from office to which another person is appointed, and who acquiesces in such removal and has not, by certiorari or otherwise, obtained a reversal of the order removing him, or a reinstatement in the vacated term by the board having authority to make it, cannot recover from the corporation the compensation incident to the office accruing during the period in which he performed no service. Nichols v. MacLean, 101 N. Y. 526, 5 N. E. 347, 54 Am. Rep. 730; McVeany v. Mayor, etc., 80 N. Y. 190, 36 Am. Rep. 600; Dolan v. Mayor, etc., 68 N. Y. 274, 23 Am. Rep. 168; Fitzsimmons v. City of Brooklyn, 102 N. Y. 536, 7 N. E. 787, 55 Am. Rep. 835. In an action to recover the salary of a public office, the title to the office necessarily comes in question, and that question cannot be tried in such action. Hadley v. City of Albany, 33 N. Y. 606, 88 Am. Dec. 412. These propositions necessarily lead to an affirmance of the judgment of the court below."

See, too, Van Valkenburgh v. Mayor, supra; Wood v. Mayor, 55 N. Y. Super. Ct. 230, affirmed 124 N. Y. 627; Matter of Bradley, 141 N. Y. 527, 530, 36 N. E. 598. It may be asked that, inasmuch as the plaintiff remained in the department as a clerk and discharged the same duties, what could be done practically for reinstatement? It may be answered that, while the plaintiff did remain and did discharge the same duties, nevertheless he was upon his own theory acting as a clerk in a different grade determined by the lower salary which was paid to him. The plaintiff could have brought proceedings to reinstate him in the former and the higher grade at the salary of $1,800 a year. We are cited to Steinson v. Board of Education of N. Y., 165. N. Y. 431, 59 N. E. 300, as contrary authority. In that case the court, per Landon, J., say:

"Mandamus would not lie as of strict right, and might be refused in the discretion of the court; hence the former denial of that remedy does not bar the present action."

But in the case at bar the plaintiff as a veteran was entitled to that writ or one of certiorari as an absolute right (section 21, c. 370, p. 809, Laws 1899, as amended by chapter 270, p. 804, Laws 1902, and chapter 697, p. 1694, Laws 1904), and the Legislature contemplated that such an one would avail himself of such remedies (chapter 716, p. 1797, Laws 1894). See, too, People ex rel. Tate v. Dalton, 158 N. Y. 204, 212, 52 N. E. 1119–1122. The learned counsel for the respondent insists that the rule that the right to the office must be shown as having been determined in favor of the plaintiff before he can sue for the incidental salary only exists when there has been an incumbent de facto and payments to him. It is true that the rule has most frequently been invoked and applied under such circumstances, but I do not think that such circumstances are essential to the existence of the rule.

The point is made that the judgment should be sustained on the proposition that the change of salary but marked a transfer in violation of the civil service regulation; and we are asked to supply a find-

ing to that effect in order to sustain the judgment under the authority of Arnot v. Erie R. Co., 67 N. Y. 315, 321, and like cases. It is true that all of the civil service regulations were read in evidence, and there is force in the contention that, under the facts in this case, such reduction may be considered as of the effect of making a transfer; but although the complaint was definite in its allegation of unlawful acts, it did not specify such an infraction, nor was that question directly litigated. Under such conditions, I think that we should not thus support the judgment. I reach this conclusion, however, without determination of the merits of this proposition.

Judgment reversed, and new trial granted, costs to abide the event. All concur.

GAYNOR, J. (concurring). It seems to me that we should not reason out that this case is against the plaintiff even on the false theory on which it was tried. On the contrary, that theory being false, we should so declare, and thus dispose of the case by pursuing a straight path, instead of following the devious one into which the plaintiff led the court below. We should stay out of it entirely.

Section 10 of the charter of the city of New York (as amended by chapter 436, p. 1069, Laws 1902) empowers the board of estimate and apportionment to fix the salaries in any department or bureau on the recommendation of the head thereof. Acting thereunder the said board passed a resolution readjusting and fixing the scale of salaries in the department of finance. The plaintiff's salary as clerk was thereby reduced from $1,800 to $1,500 a year.

The trial judge made a conclusion of law that such reduction of salary "was in legal effect" a removal of the plaintiff from his place; and from this premise followed the other conclusion that the removal was illegal because the plaintiff was not given the trial he was entitled to before he could be removed, he being a veteran fireman (City Charter, § 127), and also because he was not given an opportunity to explain before being removed (section 1543).

But the plaintiff was not removed as matter of fact. He was left in his place, and has continued there doing the very same duties as formerly. All that was done was to reduce his salary. We should have come to an extraordinary pass if the board of estimate and apportionment could not exercise the power expressly given to it to fix the salaries on the recommendation of the heads of departments, without having the courts decide that the legal effect of every reduction in the process of fixing salaries was a removal of the person affected from his place. There is no foundation whatever to support such a theory. The said board has the power to reduce as well as increase salaries, to readjust the scale of salaries in any department, on the recommendation of the head thereof, and the courts have no right to hamper it in the exercise thereof.

To reverse the plaintiff's judgment on the ground that he brought the action prematurely, i. e., before first getting himself reinstated in his office by a writ of mandamus, when in fact he has never been out of his office, and therefore cannot be allowed such a writ, would be only misleading him.