In the Matter of the Application of LEON MENDELSON, Petitioner, for an Order against JAMES E. FINEGAN and Others, as Municipal Civil Service Commissioners in and for the City of New York, and Constituting the Municipal Civil Service Commission of Such City, Defendants.*

Supreme Court, Special Term, Bronx County, June 27, 1937.

* Affd., 253 App. Div. 709; 278 N. Y. 568.

*Gabriel L. Kaplan* and *Sidney A. Fine,* for the petitioner.

*Paul Windels, Corporation Counsel* [*Robert H. Schaffer* of counsel], for the defendants.

McGEEHAN, J. This is an application by one Leon Mendelson for a peremptory order of mandamus against the respondent municipal civil service commission to compel it to annul all proceedings that led to the establishment of a promotion list for the position of law assistant, grade 2, in the law department, which is a classified position in part V, the legal service, and, in addition, to compel the commission to declare that the open competitive list upon which the petitioner has obtained first rank is the appro-

priate list from which appointment may be made to fill vacancies in the position of law assistant, grade 2.

Upon the state of the record all questions of fact have been removed from this proceeding and the remaining issue is purely one of law.

The petitioner complains that the commission is violating the Civil Service Law and its own rules in having held a promotion examination for the position of law assistant, grade 2 (petitioner's title), which it threw open to persons already in the city service holding positions in the attendance service and the clerical service. Inasmuch as only certain persons, four in number, all in the clerical service, passed the so-called promotion examination, there is no need to pass upon the petitioner's complaint that it was improper to throw open this promotion examination to all persons in those two services, although upon its face the damage that would result to the city through representation by a law department whose legal personnel is recruited from among messengers, notice servers, process servers and telephone operators (all of these titles being in the attendance service) seems obvious.

In the simplest language the issue resolves itself into a determination whether or not under the Civil Service Law promotion can be had from one part of the classified service to another part of the classified service, and, if so, under what conditions the same may be legally effected.

The facts disclose that prior to August 18, 1936, there was no such title as law assistant, grade 2. On that date, by proper amendment, the title of law assistant came into existence by being substituted for the titles law clerk, grade 1, and examiner, grade 1.

Leon Mendelson, along with some 800 other applicants, each paying two dollars for the privilege of taking an open competitive examination open to seniors in good standing in a law school of recognized standing, filed for the examination of law clerk, grade 1, and examiner, grade 1. Since the titles of law clerk, grade 1, and examiner, grade 1, were changed to law assistant, grade 2, the court will refer exclusively to the title law assistant, grade 2, in the balance of this opinion. The examination taken by these applicants involved an ascertainment of the professional legal knowledge of the candidates. For example, the landlord-tenant relationship; determination of controversies arising out of the construction of the Decedent Estate Law; common law and statutory construction of principles of real property, etc., all clearly showing that the examinees were being tested for a purely legal position. As a result of this examination the petitioner secured the first position upon the list promulgated September 24, 1936, and on March 1, 1937,

was given a temporary appointment, along with three others, from this list, and continued until May 1, 1937, when his temporary appointment expired.

Some six months after the promulgation of the list for law assistant, grade 2, participation in the examination for which was open to the public, and before any appointments were made from the promulgated list, the commission announced that it would hold a " promotion examination " for the position of law assistant, grade 2, the same position for which the open competitive examination was held. This so-called " promotion examination " was to be open to all persons who had served for no less than one year and who were in grades 1, 2 and 3 of the clerical service and grades 1, 2 and 3 of the attendance service. By way of passing, it is well to note at this point that the so-called " promotion examination " was not thrown open to individuals holding positions in the legal service of the civil service classification as contained in the rules of the commission, but was confined to incumbents of positions which are classified in entirely different parts of the classified service, namely, the clerical and the attendance service. The consequences of this attempt to promote from part to part will be discussed later in this opinion.

On March 24, 1937, thirty-eight persons took this so-called " promotion examination," thirty-six of whom held positions in the clerical service and two in the attendance service. On April 30, 1937, the commission announced that four persons had passed the so-called " promotion examination," all four of whom held positions in the clerical service of the classified service.

Upon original entrance into the positions held by each of these four persons, which positions are in part II (the clerical service), each took an examination that was totally different from the open competitive examination for law assistant, grade 2, and the " promotion examination " for the same title. The examination each originally took was not concerned with legal problems, but tested knowledge of simple arithmetic, letter writing and spelling.

It is interesting to note that one of the successful candidates took both the open competitive examination and the so-called " promotion examination," and upon the former attained position No. 31, whereas the petitioner secured position No. 1.

In analyzing the duties of clerk, grades 1, 2 and 3, it is apparent that such duties consist largely of filing of papers and records, indexing documents, calculating penalties, comparing signatures, conforming copies and answering calendars, which this court considers as merely routine clerical work for which no special legal training or knowledge is required.

In analyzing the duties of law assistant, grade 2, it is clear that such duties consist of investigating and reporting on claims, locating and interrogating witnesses, examining records, serving process, attending trials, reading proof and filing legal papers. Judging from the substance of the examination given to law assistants, grade 2, these duties are not clerical, but involve a legal understanding as to what constitutes valid legal claims enforcible and unenforcible by virtue of substantive law and an understanding of the testimony of witnesses in so far as the same is competent, relevant and material upon the trial of the issues; and examination of records with the same purpose; and attending trials with a view towards aiding trial counsel as a legal assistant.

While it is apparent to the court that a law assistant, grade 2, in every way is qualified to perform every duty of a clerk, grades 1, 2 and 3, the reverse is not true. (See *O'Connell* v. *Clark*, 200 App. Div. 606.)

The petitioner complains that those persons on the promotion eligible list have no right in law to be on that list and that any attempt to promote them is violative of law. To understand the petitioner's complaint it becomes necessary to analyze the pertinent law principles.

" Appointments and promotions in the civil service * * * shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations which, so far as practicable, shall be competitive." (Const. art. V, § 6.)

To carry out this mandate, the Civil Service Law was enacted and therein are set forth the guiding principles for the various State and municipal civil service commissions to whom are delegated the power to prescribe, amend and enforce suitable rules and regulations for carrying into effect the provisions of the Civil Service Law and the constitutional mandate. (Civil Service Law, § 6.)

The Civil Service Law is not a haphazard disjointed series of enactments. It has definite goals and attempts to reach them in an orderly manner. The Civil Service Law empowers the municipal civil service commission to set up a scheme of operation in the form of its rules and regulations. As restricted by the Civil Service Law, these rules and regulations guide in the appointment, transfer and promotion of persons in the civil service of the city. These rules have the force and effect of law.

For a better understanding of the Civil Service Law and the rules and regulations, the following definitions of the commission should be noted:

The classified service is composed of all positions over which the commission has jurisdiction, which positions are arranged into four

classes — the exempt, competitive, non-competitive and labor classes. (Rule 1, ¶ 1.)

Each class is a primary division of the classified service and is determined by the different methods of selecting candidates for the positions in that class.

To gain original entrance to a position in the competitive class, one must pass an open competitive examination which will fairly test the relative capacity and fitness to discharge the duties of that position. (Civil Service Law, § 14.)

Classification is the division into parts, groups and grades of the positions in a class. (Rule 1, ¶ 8.)

A part is the primary division of a class as determined by the duties of the positions. (Rule 1, ¶ 9.)

A group is a subdivision of a part containing a number of positions with related duties or functions. (Rule 1, ¶ 10.)

A grade denotes the order of standing of a position with reference to the compensation attached to it. (Rule 1, ¶ 13.)

A title is the designation of a position based upon its duties and functions. (Rule 1, ¶ 14.)

Following the above definitions the rules and regulations of the commission set forth the division of the competitive class of the civil service into parts, which are as follows:

Part I: " The Ungraded Service." All positions not included in any of the following parts: Part II: " The Clerical Service." Part III: " The Engineering Service." Part IV: " The Inspection Service." Part V: " The Legal Service." Part VI: " The Attendance Service." Part VII: " The Police Service " (uniformed force). Part VIII: " The Fire Service " (uniformed force). Part IX: " The Prison Service " (uniformed force). Part X: " The Street Cleaning Service." Part XI: " The Ferry Service." Part XII: " The Medical Service."

Part II deals with positions in the clerical service which are set forth as follows: Group 1 — clerks: assistant secretary, cashier, chief clerk, clerk, personal secretary, financial clerk, hospital clerk, ticket agent. Group 2 — accountants: accountant, auditor, chief accountant or bookkeeper, station agent, bookkeeper, examiner, examiner (board of transportation). Group 3 — stenographers: book typewriter, stenographer and typewriter, stenotypist, typewriter, accountant, typewriting copyist, stenographer (law), addressograph operator. Group 4 — statisticians: actuary, assistant actuary, assistant registrar of records, computer of assessments, actuarial clerk, registrar of records, statistician, statistical clerk, tabulator, statistical clerk (knowledge of typewriting).

The heading of the groups, as well as the titles of the positions enumerated under each group heading, of themselves, show that the duties of each are not related to the duties of the others.

Part V deals with positions in the legal service which are set forth as follows: Associate corporation counsel, associate assistant corporation counsel (water supply), assistant court clerk, court clerk, deputy assistant corporation counsel, deputy court clerk, associate assistant corporation counsel (water supply division), law examiner, librarian (City Court), title examiner, junior law assistant, law assistant, deputy clerk of each court (Municipal Court in each district), clerk of each court (Municipal Court), assistant clerk of each court (Municipal Court), deputy director of administration.

Part VI deals with positions in the attendance service which are set forth as follows: Attendant, gymnasium; attendant, playground; attendant, school farm; bridge keeper, bridge tender, guard, janitor (except janitor engineer), janitor steam heating, caretaker, messenger, attendant for temporary or seasonal service, attendant for permanent service, notice server, process server, telephone switchboard operator, ticket chopper, watchman.

The positions at bar are included in the classification set forth above. The positions of clerks, grades 1, 2 and 3, are classified in part II, the clerical service, and the position of law assistant, grade 2, is classified in part V, the legal service.

In order to understand the orderly plan of the administration of the principles of civil service we have a right to inquire into the reasons underlying this subdivision into parts. The reason appears apparent because each type of work is separate and distinct from all of the other types of work. "Classification is an orderly detail. It is made to limit and to define the examinations, and to segregate like employees and to restrict and to regulate promotion." (JENKS, J., in *Walters* v. *City of New York*, 119 App. Div. 464.)

It will be further noted from the definitions and the above classification that the general character of the duties of a position classified in one part is different from that of any position classified in any other part, and that presumably the examination for any position does not test fitness to discharge the duties of any other position. In *O'Connell* v. *Clark* (200 App. Div. 606) the court declared: "If * * * the petitioner's position is classified under group A, subdivision 2, of rule 7, of the Rules of the State Civil Service Commission, and the position of court attendant is under group C, subdivision 7, then we must accept as a fact that the examination for these positions involved essential tests and qualifications differing from each other."

Of course, classification cannot bar inquiry into the nature of the position and the correctness of its classification. (*Story* v. *Craig*, 231 N. Y. 33.) A position classified in one part may, by the nature of its duties, lend itself to other classification. If positions can be shown to be similar in the character of the duties to be performed, and in the examinations which tested the fitness to perform such duties, in such event, the presumption flowing from classification that the duties and the examination of the position under consideration is different from any other position in the classified service, is rebutted.

Classification may not be altered by the municipal civil service commission except by an amendment of the rules which detail such classification. (*Hellyer* v. *Prendergast*, 176 App. Div. 383; *Matter of Weeks* v. *Kraft*, 147 id. 403.) Classification may be successfully challenged by others upon the showing that such classification is incorrect. (*Kelty* v. *Kaplan*, 205 App. Div. 487.)

In deciding under what circumstances an incumbent may be promoted, it is necessary to consider other rules of the commission as well as Civil Service Law, section 16.

Promotion is the advancement from a lower to a higher grade. (Rule 1, ¶ 19.) So far as practicable, vacancies in positions must be filled by promotion from among persons holding positions in a lower grade in the department in which the vacancy exists. (Civil Service Law, § 16.) Promotion must be based upon the superior qualifications of the promotee as shown by his previous service. (Civil Service Law, § 16.) Consideration must be given only to such service as entails the performance of the duties which properly attach to the position from which promotion is sought, and duties which do not properly attach to the position, or alleged personal qualifications, cannot be considered in determining eligibility for promotion. (Rule V, § X, ¶ 3.)

Civil Service Law, section 16, requires that before an incumbent may be promoted or transferred he must hold a position which is similar, in the scope of its duties and in the nature of the examination for original entrance, to the position to which he seeks to be transferred or promoted. In discussing this requirement, the Court of Appeals in *People ex rel. Rudd* v. *Cropsey* (215 N. Y. 451, at p. 454) said: " The position previously held by the relator in this case was stenographer and private secretary. The position to which he was transferred was that of clerk. The test for entrance to the position of clerk did not differ essentially from that required for entrance to the place of stenographer and private secretary. The record shows the examinations given for both positions. The only real difference is that a candidate for the relator's former

place must have all the qualifications required for entrance to the position of clerk, and, in addition, must show proficiency in type-writing and stenography. That difference in the tests is not essential, viewed from the position of clerk. because a candidate who shows himself qualified to be a stenographer must of necessity show his qualifications to be clerk. The converse of that proposition is, of course, not true. One shown qualified to hold the place of clerk cannot be transfered to the position of stenographer and private secretary, because then the difference in the tests for original entrance to the two positions becomes highly essential, and an examination for the position of clerk would not show the qualifications that a person in the position of stenographer must have."

The Appellate Division of this Department has recently held to the same effect in *Matter of Woods* v. *Finegan* (246 App. Div. 271).

In New York Legislative Documents (N. Y. Legis. Doc. [1921] No. 90, pp. 157–158) is reported the following opinion rendered by Attorney-General Newton to the State Civil Service Commission: " At the request of Commissioners Rice and Smith, I have examined the question raised in the memorandum dated September 16, 1920, signed by Mary H. Lockwood, hearing stenographer in the Industrial Commission. The fact that experience in a given position is indicative of merit and fitness for that position and for higher positions *of the same character*, has led to the adoption of the principle of promotion where possible, in preference to appointment from open competitive lists, *and as I understand the spirit of section 16, it is to narrow down rather than to broaden the scope of admissibility to promotion examinations*. Therefore it seems to me logical that in holding a promotion examination for hearing stenographer, it should be open only to hearing stenographers (there being such in a lower grade in the same department) and not also to other stenographers. The reason for my impression is that there is a real difference between stenographers and hearing stenographers; *a difference in the kind of work and the qualifications for the work*. This difference is recognized by the Civil Service Commission, which formerly had but one classification for stenographers, but has recently recognized a new title for hearing stenographers and has held an examination for them as distinguished from ordinary stenographers. Outside of the civil service there is a well-recognized difference between stenographers and shorthand reporters. The hearing stenographer of the civil service is the same as the shorthand reporter of the business world. *In my opinion there is such a difference between hearing stenographers and stenographers, that where a promotion examination for hearing stenographers to be in grade seven is held, it should be open to hearing stenographers in grade*

*six rather than to both hearing stenographers and plain stenographers.*"

The respondent claims that there is statutory language which justifies the attempted promotion at bar, and points to that portion of Civil Service Law, section 16, which reads as follows: "nor shall a person be promoted or transferred to a position for original entrance to which there is required by this chapter or the rules an examination involving essential tests or qualifications different from or higher than those required for original entrance to the position held by such person, *unless he shall have passed the examination or attained a place upon the eligible list for such higher position.*"

The respondent asserts that its action is proper, since the persons whom it seeks to promote have passed a promotion examination. This argument has already been answered by the late Judge POUND while a member of the State Civil Service Commission, when he stated (N. Y. Assem. Doc. [1902], No. 56, p. 263 *et seq.*): "In section 15 (now section 16) the words 'passed the examination' refer to positions in the non-competitive class, and the words 'attained a place upon the eligible list' refer to positions in the competitive class, and no transfer can be authorized from the exempt to the competitive class unless the person to be transferred is on the eligible list for the position for which it is desired to transfer him."

The identical definition is made in Collier on Civil Service, wherein the author states (at p. 100): "Inasmuch as the transfers may be to non-competitive positions as well as to competitive positions, it seems quite evident that the phrase 'unless he shall have passed an examination' refers to the condition imposed upon one who seeks a transfer to a non-competitive position; while the phrase 'obtained a place upon the eligible list' refers to the condition imposed upon one who seeks a transfer to a position in the competitive class."

The Court of Appeals has held in *Hale* v. *Worstell* (185 N. Y. 247) that an incumbent who gained a place upon an open competitive eligible list for another position could not be transferred to that position where it appeared that the position which he held was essentially dissimilar from the position to which he sought transfer, and that before being appointed to the latter position he must wait until his place on the eligible list of the latter has been reached.

As further stated in Collier on Civil Service (at p. 99): "For a proper understanding of these provisions it should first be noted that they are all in the negative. They are restrictions. None of them are affirmative grants of power."

In other words, where an attorney takes an examination for a clerk in which technical legal knowledge is not tested in the examination and is duly appointed to said position as clerk he is not by virtue of his appointment as clerk and the knowledge he possesses as an attorney eligible for promotion to a position that requires an examination of the legal qualifications of the incumbent. To hold otherwise would result in grave injustice to well-founded principles of civil service. For example, an individual may gain entrance to civil service in the department of hospitals in the capacity of an inspector. Suppose he is a regularly licensed physician. Now upon a vacancy occurring on the medical staff for a physician in the department of hospitals would such incumbent be entitled to enter a promotion examination simply by virtue of his service as an inspector and the fact that he is a physician, or would he be obliged to compete in an open competitive examination for the position of physician? The answer is obvious. Upon his entry into civil service as an inspector his personal qualifications as a physician were not tested by the examination for an inspector and, therefore, the incumbent cannot be considered as eligible for promotion to physician.

To allow a contrary result would encourage sharp conniving individuals not competent to successfully compete in open competitive examination for the position they seek, to take an open examination for a menial job for which the competition was less keen and at a lower intellectual level and then upon being appointed to the menial position seek promotion, to the exclusion of those better qualified, simply because of the manoeuvering.

It appears to this court that the four candidates who took and successfully passed the so-called promotion examination possessed the necessary qualifications to take the open competitive examination. In fact, one of the candidates did, and secured position No. 31 on the list upon which the petitioner herein secured position No. 1. Apparently, the other three successful candidates upon the so-called promotion list did not wish to run the risk of competing in open competition for the position and so failed to take the examination.

It is clear to this court that the respondent by feigning solicitude for the principle of preference in appointment by promotion of incumbents, is stretching that principle to a degree unauthorized by the Civil Service Law and by article V, section 6, of the State Constitution.

Perusal of the respondent's rules likewise indicates that the here attempted promotion is invalid. Without extended reference to all of the rules which indicate that invalidity, this court notes

that rule V, section 10, paragraph 13, provides that promotions may be made to positions in certain parts (Part V, the legal service is omitted), where the commission finds " that the nature of the duties of the positions held by such persons is such as properly fits them to perform the duties of the positions to which they seek promotion, as fully as do the duties of persons who are regularly eligible for such promotion examination."

It is especially significant that when *Kelty* v. *Kaplan* (205 App. Div. 487) was decided there was in existence rule XV, clause 19, which, similarly as does the paragraph of the rule here under discussion, enumerated the parts *into* which promotion might be made from other parts, and specifically included part V, the legal service. Following the *Kelty* decision, clause 19 was amended by omitting therefrom part V, the legal service (and also part IV, the inspection service), and so far as concerns the enumeration of the remaining parts and authorization for promotion thereto, it now constitutes said paragraph 13.

Rule V, section X, paragraph 11, enumerates additional exceptions by which promotion may be gained *into* certain parts. Again, part V, the legal service, is not included among these exceptions.

Rule V, section X, paragraphs 18–21, provides for a system of service credit for persons who seek promotion. Precedence upon a promotion eligible list is thus dependent in part upon a rating for experience in the performance of the duties of the position from which promotion is sought. This being so, only experience in the performance of duties similar to those of the higher position, can aid in estimating the applicant's fitness to perform the duties of the higher position. It appears obvious that an examiner cannot determine fitness to perform the duties of a higher position, when the service record of the applicant for promotion discloses the performance of totally unrelated duties. Assuming that a service record discloses that the applicant has filed legal papers or has compared and certified the genuineness of signatures on legal documents, how can the examiner rate the applicant's ability to interrogate witnesses and to evaluate the legal consequences of their testimony or to investigate claims with the same results?

In *Matter of Ricketts* (111 App. Div. 669) an assistant foreman in the fire department sought mandamus to compel the commissioners to permit him to enter a promotion examination for foreman in the same department. He failed to comply with the rule which required that eligibility for promotion be limited to those who had served in the next lower grade for at least six months. In denying his application, the Appellate Division of this Depart-

ment, declared "How are 'seniority' and 'meritorious service' in the grade below and the 'superior qualifications of the persons promoted, as shown by this previous service,' to be ascertained and given their due weight, if there has been no service in the lower grade?"

The Civil Service Law has as its underlying principle the desire of affording everyone who has the necessary qualifications an equal opportunity of securing appointment. Trickery in manipulating the principles of civil service so as to serve some favorite son is as much to be condemned as the practice of the spoils system. A possible opening may be found in the practice of promotions if those principles are not carefully observed. Since promotion examinations are, in effect, qualifying examinations and not open to the public who are obliged to compete in open competitive examinations for the position, such promotion examinations should be confined to well-set limits and should not be used to defeat the very purposes of civil service. To take an obvious illustration: suppose a medical student while studying passes an examination for a messenger and after a number of years becomes a doctor and then an examination is ordered for a position of physician in the medical service. Would the messenger be entitled to entrance into a promotion examination which he need only pass to qualify for the position of physician in the medical service or would he be obliged to enter open competitive examinations along with all other qualifying applicants? Justice and equity prompt the latter course because while it may be an incentive to enter civil service at a menial task and study for promotion, such promotion should be confined along certain well-directed lines so that the public shall not be deprived of an equal opportunity to compete for the different positions.

As stated by the State Civil Service Commission (Assem. Doc. [1908] Nos. 25–26, p. 7): "Danger to the merit system now exists not so much in the assaults of those whose prerogatives or patronage its enactment affected as from the more subtle influences that come of personal interest and the feeling among appointing officers in particular instances that their personal knowledge of the faithfulness and capacity of a candidate for a position should prevail. This is a sort of favoritism that perhaps does not affect the efficiency of the public service, but it is favoritism none the less and in so far as it paves the way for exceptions from the rule imposing competition as a means of entrance to that service it prejudices the right of possible and perhaps better qualified candidates and thus defeats one of the ends for which the Civil Service Law exists —

the opening of the door of opportunity to all who can show themselves fit and worthy."

The fact that 800 people paid two dollars each for the privilege of taking an open competitive examination for the positions that were to be filled by four men who did not take the open competitive examination, but instead took a so-called promotion examination that in effect was a qualifying examination, shows the interest manifested in the position by the public. Certainly, not one of the 800 applicants had the slightest chance of being appointed to the position because the entire subsequent promotion procedure was a travesty on the true doctrines of civil service.

If the commission wishes to take care of certain individuals they should do so in an open fair manner and not induce 800 people to go through the expense and trouble of a competitive examination and hold out to them the false hope of appointment. The public should be protected in its rights to civil service.

To preserve the integrity of the civil service system and to maintain the faith of the public in civil service, this application should be granted and the mandamus allowed.

Settle order accordingly.