RAILWAY MAIL ASSOCIATION, Plaintiff, *v.* MICHAEL J. MURPHY, as Acting Industrial Commissioner of the State of New York, et al., Defendants.

Supreme Court, Special Term, Albany County, November 4, 1943.

*Daniel J. Dugan* for plaintiff.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Wendell P. Brown* and *Henry S. Manley* of counsel), for defendants.

MURRAY, J. This is a motion by plaintiff for summary declaratory judgment, and a countermotion by defendants for a dismissal of the complaint. No questions of fact are involved. The issues are of law. Plaintiff is a membership fraternal beneficiary corporation organized in the year 1898 under the laws of the State of New Hampshire, at which time the corporate name was National Association of Railway Postal Clerks. The present name of plaintiff was assumed by it September 21, 1904. The certificate of incorporation states that: '' The object for which this corporation is established is to conduct the business of a fraternal beneficiary association for the sole benefit of its members and beneficiaries and not for profit; to promote closer social relationship among railway postal clerks; to better enable them to perfect any movement that may be for their benefit as a class or for the benefit of the railway mail service; to provide relief for its members and their beneficiaries and make provisions for the payment of benefits to them in case of death, sickness, temporary or permanent physical disability, either as a result of disease, accident or old age.''

Both New Hampshire and New York States have recognized and approved plaintiff's articles of incorporation and by-laws to the effect that it has the right to conduct a fraternal insurance business within such States. Membership in plaintiff is restricted to regular male Railway Postal Clerks or male substitute Railway Mail Postal Clerks of the United States Railway Mail Service, who are of the Caucasian race or are native American Indians. There are approximately 22,000 members, classified either as general or nonbeneficiary or as beneficiary or full members. Ninety-nine per cent of the members are beneficiary or full members, and upon death of such a member through external, violent and accidental means, moneys are paid by plaintiff to their designated beneficiaries. Appointments and promotions in the Railway Mail Service are made under and **pursuant to the civil service laws of the United States.**

There are division and branch associations of plaintiff in various states of the United States, and within the State of New York there are established and maintained thirteen branch associations. Certain officers and members of a branch association of the second division in the city of New York have challenged the right of plaintiff to insist on observance of article III of its constitution that only persons of the Caucasian race or native American Indians be admitted to membership. The Attorney-General of the State of New York has advised the Industrial Commissioner of the State of New York that plaintiff is a labor organization, and that article III of its constitution is invalid and unenforcible within the State of New York; that plaintiff has no valid or legal right to deny to any applicant, otherwise duly qualified, membership by reason of race, color or creed.

The opinion of the Attorney-General is predicated upon section 43 of the Civil Rights Law, which reads as follows: " Discrimination by labor organizations prohibited. As used in this section, the term ' labor organization ' means any organization which exists and is constituted for the purpose, in whole or in part, of collective bargaining, or of dealing with employers concerning grievances, terms or conditions of employment, or of other mutual aid or protection. No labor organization shall hereafter, directly or indirectly, by ritualistic practice, constitutional or by-law prescription, by tacit agreement among its members, or otherwise, deny a person or persons membership in its organization by reason of his race, color or creed, or by regulations, practice or otherwise, deny to any of its members, by reason of race, color or creed, equal treatment with all other members in any designation of members to any employer for employment, promotion or dismissal by such employer." (Also, see Civil Rights Law, § 41, amd. L. 1940, ch. 9, L. 1941, ch. 893, L. 1942, ch. 478.)

Section 45 of the Civil Rights Law, added by chapter 677 of the Laws of 1942, provides: " Powers of administration vested in industrial commissioner. The industrial commissioner may enforce the provisions of sections forty-two, forty-three and forty-four of this chapter. For this purpose he may use the powers of administration, investigation, inquiry, subpoena, and hearing vested in him by the labor law; he may require submission at regular intervals or otherwise of information, records and reports pertinent to discriminatory practices in industries."

Defendants contend that plaintiff is a labor organization because of the provisions contained in its articles of incorpora-

tion, in its constitution, and, because since the year 1917, plaintiff has been a member organization in the American Federation of Labor, having accepted a certificate of affiliation from such Federation of Labor and having contributed to the expenses of such organization, and further by participating in its conventions and other activities.

Plaintiff emphatically denies it is a labor organization, in fact or in law, measured either by the terms of its charter, its laws or by the nature of the service and work its members perform. Plaintiff maintains that section 715 of the Labor Law of the State of New York specifically exempts and excludes plaintiff from the category of a labor organization even if it be held that plaintiff is such a body.

Such law of immunity is as follows: " The provisions of this article shall not apply to the employees of any employer who concedes to and agrees with the board that such employees are subject to and protected by the provisions of the national labor relations act or the federal railway labor act or to employees of the state or of any political or civil subdivision or other agency thereof, or to employees of charitable, educational or religious associations or corporations."

Defendants assert that the status of plaintiff is defined clearly by the provisions of section 43 of the Civil Rights Law, and that such statute is valid and applicable to it. Plaintiff insists that sections 41, 43 and 45 of the Civil Rights Law alone have no application to it, but are *in pari materia* with other sections of the Labor Law and all should be construed together, and that the new provisions of the Civil Rights Law were designed to implement the provisions of the Labor Law dealing with the same subject. Thus construed, the statutes and their subdivisions clearly demonstrate a specific intent to exclude employees of the State from applications to them of the Civil Rights Law, particularly section 43.

Actions for declaratory judgments are proper where the legality or meaning of a statute or of a ruling made by an administrative official is in dispute and no question of fact involved. (*Dun & Bradstreet, Inc.* v. *City of New York*, 276 N. Y. 198; *Socony-Vacuum Oil Co.* v. *City of New York*, 247 App. Div. 163, affd. 272 N. Y. 668.) The purpose of a declaratory judgment is to determine disputed jural questions when a genuine controversy exists and when such a judgment will serve a practical end in determining and stabilizing an uncertain or disputed jural question, either as to present or prospective obligations. (*New York F. T. Z. Operators Inc.* v. *State Liquor Authority,*

285 N. Y. 272; *James* v. *Alderton Dock Yards,* 256 N. Y. 298; *Sartorious* v. *Cohen,* 249 N. Y. 31; *Brownell* v. *Board of Education,* 239 N. Y. 369.)

The basic fundamental element presented for determination is whether plaintiff is a labor organization. Section 43 of the Civil Rights Law, in part, specifically provides that: " *No labor organization shall hereafter, directly or indirectly* * * * *deny a person or persons membership in its organization by reason of his race, color or creed,* or by regulations, practice or otherwise, deny to any of its members, by reason of race, color or creed, equal treatment with all other members in any designation of members to any employer for employment, promotion or dismissal by such employer." (Italics supplied.)

The term labor organization is defined in section 43 of the Civil Rights Law in exactly the same words, language and phraseology as are used in subdivision 5 of section 701 of the Labor Law, which reads: " The term ' labor organization ' means any organization which exists and is constituted for the purpose, in whole or in part, of collective bargaining, or of dealing with employers concerning grievances, terms or conditions of employment, or of other mutual aid or protection * * * ".

What is collective bargaining? Some light is cast upon the meaning and implications of this significant phrase by a statement of some of the recognized evils which flow from refusal to bargain collectively as set forth in section 700 of the Labor Law as follows: " When some employers deny the right of employees to full freedom of association and organization, and refuse to recognize the practice and procedure of collective bargaining, their actions lead to strikes, lockouts and other forms of industrial strife and unrest which are inimical to the public safety and welfare, and frequently endanger the public health."

Collective bargaining broadly defined is an agreement between an employer and a labor union which regulates the terms and conditions of employment with reference to hours of labor and wages, and deals also with strikes, lockouts, walkouts, arbitration, shop conditions, safety devices, the enforcibility and interpretation of such agreement and of numerous other relations existing between employer and employee.

Plaintiff has only such rights and powers as are expressly granted it by its charter or implied as necessary in the exercise of its corporate franchise. A proposition which is beyond dispute and generally recognized is that a corporation cannot enter into or bind itself by a contract prohibited by its charter.

" Corporations are artificial creations existing by virtue of some statute and organized for the purposes defined in their charters. * * * A corporation necessarily carries its charter wherever it goes, for that is the law of its existence." (*Jemison* v. *Citizens Savings Bank,* 122 N. Y. 135, 140.)

" Wherever a corporation goes for business it carries its charter, and the charter is the same abroad that it is at home." (*Rolfe* v. *Rundle,* 103 U. S. 222.)

" Whatever disabilities are placed upon the corporation at home it retains abroad, and whatever legislative control it is subjected to at home must be recognized and submitted to by those who deal with it elsewhere." (*McClement* v. *Order of Foresters,* 222 N. Y. 470, 480.)

When the State of New York through its Department of Insurance examined the articles of incorporation and the certificates and other evidence of the insurance contract issued by plaintiff to its members and conferred upon it authority to transact insurance business within the State of New York, it determined then and there by such decision both as a matter of fact and law that plaintiff was a beneficial insurance society and not a labor organization.

Section 154, subdivision 1, of the Insurance Law states: " No policy of life insurance, industrial life insurance, group life insurance, accident or health insurance, group or blanket accident or health insurance or non-cancellable disability insurance, *no fraternal benefit certificate,* and no annuity or pure endowment contract or group annuity contract *shall be issued or delivered in this state unless a copy of the form thereof shall have been filed with the superintendent and approved by him* as conforming to the requirements of this chapter and not inconsistent with law." (Italics supplied.)

Membership in plaintiff is confined strictly to persons who pass United States civil service examinations for the position of railway mail clerk. The primary purpose of civil service laws and rules is to promote the good of the public service. The underlying principle of such laws is to afford to everyone who has the necessary qualifications an equal opportunity of securing appointment. (*People ex rel. Kastor* v. *Kearny,* 164 N. Y. 64; *Matter of Mendelson* v. *Finegan,* 168 Misc. 102, affd. *sub nom. Matter of Mendelson* v. *Kern,* 278 N. Y. 568.)

Civil service employees of the United States are protected from summary removal except for cause by section 652 of title 5 of the United States Code, which is, in part, as follows: " Removals from classified Civil Service for cause only. No

person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing; and affidavits in support thereof; but no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal; and copies of charges, notice of hearing, answer, reasons for removal, and of the order of removal shall be made a part of the records of the proper department or office, as shall also the reasons for reduction in rank or compensation; and copies of the same shall be furnished to the person affected upon request, and the Civil Service Commission also shall, upon request, be furnished copies of the same.''

Not only must charges be preferred, but they must be based on substantial matters. To justify removal the charges must be made in good faith and not as a mere pretext for removal. Against unjust discharge, employees have recourse to the courts for redress, review and reinstatement in their positions. They are shielded by law from the anger and temper of arrogant, dictatorial and disagreeable superiors, who, to vent their spleen or otherwise, prefer fanciful and unsubstantial charges. No such safeguards surround the industrial worker. When discharged, he is discharged, and that is the end of the matter. The courts are not open to him for relief.

To tolerate or recognize any combination of civil service employees of the government as a labor organization or union is not only incompatible with the spirit of democracy, but inconsistent with every principle upon which our government is founded. Nothing is more dangerous to public welfare than to admit that hired servants of the State can dictate to the government the hours, the wages and conditions under which they will carry on essential services vital to the welfare, safety and security of the citizen. To admit as true that government employees have power to halt or check the functions of government, unless their demands are satisfied, is to transfer to them all legislative, executive and judicial power. Nothing would be more ridiculous.

The reasons are obvious which forbid acceptance of any such doctrine. Government is formed for the benefit of all persons, and the duty of all to support it is equally clear. Nothing is

more certain than the indispensable necessity of government, and it is equally true that unless the people surrender some of their natural rights to the government it cannot operate. Much as we all recognize the value and the necessity of collective bargaining in industrial and social life, nonetheless, such bargaining is impossible between the government and its employees, by reason of the very nature of government itself. The formidable and familiar weapon in industrial strife and warfare — the strike — is without justification when used against the government. When so used, it is rebellion against constituted authority.

Plaintiff is not only not a labor organization within the terms of its charter, but it does not exist nor is it constituted for the purpose in whole or in part of collective bargaining. The mere fact that the American Federation of Labor issued to plaintiff a certificate of affiliation in no manner repeals, rescinds or amends the charter granted plaintiff to transact insurance business. The acceptance by plaintiff of such certificate of affiliation was an *ultra vires* act not within the powers conferred on plaintiff by the State of New Hampshire, and is of no force or effect.

Collective bargaining has no place in government service. The employer is the whole people. It is impossible for administrative officials to bind the Government of the United States or the State of New York by any agreement made between them and representatives of any union. Government officials and employees are governed and guided by laws which must be obeyed and which cannot be abrogated or set aside by any agreement of employees and officials.

President Franklin D. Roosevelt in clear, definite and precise language declares that militant tactics have no place in the functions of any organization of government employees as follows: "Upon employees in the Federal service rests the obligation to serve the whole people, whose interests and welfare require orderliness and continuity in the conduct of Government activities. This obligation is paramount. Since their own services have to do with the functioning of the Government, a strike of public employees manifests nothing less than an intent on their part to prevent or obstruct the operations of government until their demands are satisfied. Such action, looking toward the paralysis of government by those who have sworn to support it, is unthinkable and intolerable." (Letter written to Luther C. Steward, President of National Federation of Federal Employees.)

Section 43 of the Civil Rights Law creates no new civil remedy. Any person who violates any of its provisions is guilty of a misdemeanor. It must be strictly construed. (*People* v. *Benc,* 288 N. Y. 318.) The purpose and intent of the statute is that " organized labor " must not discriminate as to membership in labor unions by reason of race, color or creed. The purpose of sections 41, 43 and 45 is penal. They do not provide for civil remedies. These sections were not enacted for the purpose of compelling a fraternal beneficiary insurance association to admit as members every person regardless of race, color or creed.

Tested by the charter of plaintiff, the approval of the State of New York that plaintiff is a fraternal beneficiary society, the type, kind and character of the employment of the members of plaintiff, the New York State Labor Relations Act (Labor Law, § 700 *et seq.*) and the Civil Rights Law construed together, the demonstrated fact that civil service employees of the United States have no right or authority to bargain collectively, the conclusion is inescapable that plaintiff is not a " labor organization " within the purview of section 43 of the Civil Rights Law. To hold otherwise would be to sanction control of governmental functions not by laws but by men. Such policy if followed to its logical conclusion would inevitably lead to chaos, dictators and the annihilation of representative government.

Judgment in accordance herewith is granted plaintiff.

Submit order.