RAILWAY MAIL ASSOCIATION *v.* CORSI, INDUS-
TRIAL COMMISSIONER OF THE STATE OF
NEW YORK, ET AL.

No. 691.   Argued April 3, 1945.—Decided June 18, 1945.

*Mr. Daniel J. Dugan,* with whom *Mr. Isadore Book-
stein* was on the brief, for appellant.

*Wendell P. Brown,* First Assistant Attorney General of New York, with whom *Nathaniel L. Goldstein,* Attorney General, *Orrin G. Judd,* Solicitor General, and *Henry S. Manley,* Assistant Attorney General, were on the brief, for appellees.

Briefs were filed by *Messrs. William H. Hastie, Thurgood Marshall* and *Leon A. Ransom* on behalf of the National Association for the Advancement of Colored People; and by *Messrs. Arthur Garfield Hays* and *Walter Gordon Merritt* on behalf of the American Civil Liberties Union, as *amici curiae,* in support of appellees.

MR. JUSTICE REED delivered the opinion of the Court.

The appellant, Railway Mail Association, questioned the validity of Section 43, and related Sections 41 and 45, of the New York Civil Rights Law which provide, under penalty against its officers and members, that no labor organization shall deny a person membership by reason of race, color or creed, or deny to any of its members, by reason of race, color or creed, equal treatment in the designation of its members for employment, promotion or dismissal by an employer.[1] Appellant contended that it was not a "labor organization" subject to these sections, and that if they were held to apply to it, they

---

[1] Section 43 of the New York Civil Rights Law, N. Y. Consol. Laws, ch. 6, provides:

"As used in this section, the term 'labor organization' means any organization which exists and is constituted for the purpose, in whole or in part, of collective bargaining, or of dealing with employers concerning grievances, terms or conditions of employment, or of other mutual aid or protection. No labor organization shall hereafter, directly or indirectly, by ritualistic practice, constitutional or by-law prescription, by tacit agreement among its members, or otherwise, deny a person or persons membership in its organization by reason of his race, color or creed, or by regulations, practice or otherwise, deny to any of its members, by reason of race, color or creed, equal treatment with all other members in any designation of members to

violated the due process and equal protection clauses of the Fourteenth Amendment of the federal Constitution and were in conflict with the federal power over post offices and post roads. Article I, § 8, Clause 7, of the federal Constitution. The New York Court of Appeals rejected these contentions.[2] On appeal to this Court, consideration of the question of jurisdiction was postponed to the hearing on the merits for determination of whether the case presented a "case or controversy" within the meaning of the federal Constitution. The jurisdiction of this Court rests on § 237 (a) of the Judicial Code.

The appellant, Railway Mail Association, a New Hampshire corporation, is an organization with a membership

---

any employer for employment, promotion or dismissal by such employer."

Section 41 of the law, prescribing the penalties for violations of § 43, provides:

". . . any officer or member of a labor organization, as defined by section forty-three of this chapter, or any person representing any organization or acting in its behalf who shall violate any of the provisions of section forty-three of this chapter or who shall aid or incite the violation of any of the provisions of such section shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . and such officer or member of a labor organization or person acting in his behalf, as the case may be shall, also, for every such offense be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one hundred dollars nor more than five hundred dollars, or shall be imprisoned not less than thirty days nor more than ninety days, or both such fine and imprisonment."

Section 45 of the same law provides:

"The industrial commissioner may enforce the provisions of sections . . . forty-three . . . of this chapter. For this purpose he may use the powers of administration, investigation, inquiry, subpoena, and hearing vested in him by the labor law; he may require submission at regular intervals or otherwise of information, records and reports pertinent to discriminatory practices in industries."

[2] *Railway Mail Association* v. *Corsi*, 293 N. Y. 315, 56 N. E. 2d 721.

of some 22,000 regular and substitute postal clerks of the United States Railway Mail Service. It has division and branch associations, thirteen of such branch associations being located in different parts of New York. Article III of appellant's constitution limits membership in the association to eligible postal clerks who are of the Caucasian race, or native American Indians.[3] Certain officers and members of one of appellant's branch associations raised the question of the validity of Article III of appellant's constitution with the appellee, the Industrial Commissioner of the State of New York, who was charged with enforcement of § 43. Faced with the threat of enforcement of the statute against it, the appellant filed suit against the Industrial Commissioner in a state court for a declaratory judgment to determine the validity of § 43, and related provisions, and for an injunction restraining its enforcement against the appellant. A state Supreme Court entered judgment for the appellant, finding that it was not a "labor organization" as defined in § 43 of the state statute.[4] On appeal to the Appellate Division, this judgment was reversed, the appellate court finding that appellant was covered by § 43 and that § 43 as applied to appellant did not violate the federal Constitution.[5]

On appeal to the New York Court of Appeals, the judgment against the appellant was affirmed. The Court of Appeals noted that appellant's constitution provided that one of the objects of the association was to enable railway

[3] Constitution, Railway Mail Association, 1941–43, Article III, provides:

"Any regular male Railway Postal Clerk or male substitute Railway Postal Clerk of the United States Railway Mail Service, who is of the Caucasian race, or a native American Indian, shall be eligible to membership in the Railway Mail Association."

[4] *Railway Mail Association* v. *Murphy*, 180 Misc. 868, 44 N. Y. S. 2d 601.

[5] *Railway Mail Association* v. *Corsi*, 267 App. Div. 470, 47 N. Y. S. 2d 404.

postal clerks "to perfect any movement that may be for their benefit as a class or for the benefit of the Railway Mail Service . . .";[6] that the Industrial Secretary of the Association [7] was to assist in the presentation of grievances pertaining to service conditions and endeavor to secure adjustment of such through administrative action.[8] It was pointed out that appellant was affiliated with the American Federation of Labor and that the appellant was designated a "labor union" in the Bulletin of the United States Department of Labor as well as in various trade union publications and reports. Appellant's own publications claimed credit for bringing "to every railway postal clerk many material benefits" and "many additional millions of dollars brought to the pockets of railway postal clerks each year by the efforts of the Association," and pointed out that "Reforms always come as a result of demands from the worker. If better conditions are worth securing, they must come as the result of organized effort." [9] In the light of this evidence, the Court of Appeals held appellant to be a "labor organization" as defined in § 43. As heretofore stated, it rejected appellant's contentions that the statute, as applied to it, violated the federal Constitution.

---

[6] Constitution, Railway Mail Association, 1941–43, Article II, provides:

"The object of this Association is to conduct the business of a fraternal beneficiary association for the sole benefit of its members and beneficiaries, and not for profit; to provide closer social relations among railway postal clerks, to enable them to perfect any movement that may be for their benefit as a class or for the benefit of the Railway Mail Service and make provision for the payment of benefits to its members and their beneficiaries in case of death, temporary or permanent physical disability as a result of accidental means."

[7] The Industrial Secretary also has a duty under appellant's constitution, Article VII, § 3 (4), to represent members before the United States Employees' Compensation Commission.

[8] *Ibid.*, Article VII, § 3 (3).

[9] *Railway Mail Association* v. *Corsi*, 293 N. Y. 315, 320.

Prior to consideration of the issues, it is necessary to determine whether appeal from this state court declaratory judgment proceeding presents a justiciable "case or controversy" under §§ 1 and 2 of Article III of the federal Constitution. We are of the opinion that it does. The conflicting contentions of the parties in this case as to the validity of the state statute present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract. Legal rights asserted by appellant are threatened with imminent invasion by appellees and will be directly affected to a specific and substantial degree by decision of the questions of law.[10] *Nashville, C. & St. L. R. Co.* v. *Wallace*, 288 U. S. 249, 261–62. See *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, 242; *Currin* v. *Wallace*, 306 U. S. 1, 9; *Gibbs* v. *Buck*, 307 U. S. 66, 76–77; *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.*, 312 U. S. 270, 272–73; *Tennessee Coal Co.* v. *Muscoda Local*, 321 U. S. 590, 592. Cf. *Pierce* v. *Society of Sisters*, 268 U. S. 510.

Appellant first contends that § 43 [11] and related §§ 41 and 45 of the New York Civil Rights Law, as applied to appellant, offends the due process clause of the Fourteenth Amendment as an interference with its right of selection to membership and abridgment of its property rights and liberty of contract. We have here a prohibition of discrimination in membership or union services on account of race, creed or color. A judicial determination that such

---

[10] One of the appellant's branch associations attempted to admit into its membership persons not of the Caucasian race. Appellant denied such applicant's membership, whereupon state officials charged with the enforcement of § 43, on complaint by certain interested parties, asserted the applicability of that law to appellant, the invalidity of Article III of appellant's constitution and prepared to invoke substantial statutory penalties for failure to comply with § 43. Appellant asserts the invalidity of the statute and is faced with either violating its own constitution or a state statute.

[11] See note 1, *supra*.

legislation violated the Fourteenth Amendment would be a distortion of the policy manifested in that amendment, which was adopted to prevent state legislation designed to perpetuate discrimination on the basis of race or color. We see no constitutional basis for the contention that a state cannot protect workers from exclusion solely on the basis of race, color or creed by an organization, functioning under the protection of the state, which holds itself out to represent the general business needs of employees.[12]

To deny a fellow-employee membership because of race, color or creed may operate to prevent that employee from having any part in the determination of labor policies to be promoted and adopted in the industry and deprive him of all means of protection from unfair treatment arising out of the fact that the terms imposed by a dominant union apply to all employees, whether union members or not. In their very nature, racial and religious minorities are likely to be so small in number in any particular industry as to be unable to form an effective organization for securing settlement of their grievances and consideration of their group aims with respect to conditions of employment. The fact that the employer is the Government has no significance from this point of view.[13]

Appellant's second ground for attack on the validity of § 43, and related provisions, is that equal protection of the laws is denied to it by the section. Appellant rests its argument on the fact that Article 20 of the New York Labor Law,[14] conferring certain rights on employees and labor organizations with respect to organization and col-

---

[12] See *Steele* v. *Louisville & N. R. Co.*, 323 U. S. 192; *Tunstall* v. *Brotherhood of Locomotive Firemen*, 323 U. S. 210; *Thomas* v. *Collins*, 323 U. S. 516, 532.

[13] See 5 U. S. C. § 652, 37 Stat. 555, discussed *infra*, pp. 96–97.

[14] New York State Labor Relations Act. N. Y. Consol. Laws, ch. 31, Art. 20, §§ 700–716. This statute creates a state labor relations board and contains provisions in aid of employee's rights to organize and bargain collectively with their employers.

lective bargaining, excludes from the operations of its provisions labor organizations, such as the appellant, whose members are "employees of the state,"[15] while § 43 includes the appellant in the definition of "labor organizations" subject to its provisions.[16] Appellant thus contends that the state could not classify appellant so as to be subject to § 43 and deny it the benefits of the provisions of Article 20; that the state's failure to extend Article 20 to include the appellant denies it equal protection. A state does not deny equal protection because it regulates the membership of appellant but fails to extend to organizations of government employees provisions relating to collective bargaining. Under customary practices government employees do not bargain collectively with their employer. The state may well have thought that the problems arising in connection with private employer-employee relationship made collective bargaining legislation more urgent and compelling than for government employees. Cf. *Labor Board* v. *Jones & Laughlin Corp.,* 301 U. S. 1, 46.

There remains to be considered the appellant's third contention: that § 43, and related provisions, are repugnant to Article I, § 8, Clause 7, of the federal Constitution, which confers on Congress the authority over postal matters; that § 43 constitutes an invasion of this field over which Congress has exclusive jurisdiction and constitutes an attempt to regulate a federal instrumentality. Government immunity from state tax and regulatory provisions does not extend beyond the federal government itself and its governmental functions. In the regulation of its internal affairs, the state inevitably imposes some burdens on those dealing with the national government of the same kinds as those imposed on others. *Penn Dairies* v. *Milk Control Commission,* 318 U. S. 261, 270. Section 43 does not impinge on the federal mail service or the

---

[15] N. Y. Consol. Laws, ch. 31, § 715.

[16] See note 1, *supra.*

power of the government to conduct it. It does not burden the government in its selection of its employees or in its relations with them. Nor does it operate to define the terms of that federal employment or relate to any aspect of it. Section 43 is confined in its application to a purely private organization deriving no financial or other statutory support or recognition from the federal government and which in no way acts as an instrumentality of the federal government in performance of its postal functions. The operation of the mails is no more affected by this statute than by a state law requiring annual meetings, or the election of officers by secret ballot, or by a state insurance regulation applicable to appellant's fraternal benefit activities. The decided cases which indicate the limits of state regulatory power in relation to the federal mail service involve situations where state regulation involved a direct, physical interference with federal activities under the postal power or some direct, immediate burden on the performance of the postal functions. *Johnson* v. *Maryland*, 254 U. S. 51, 57; *Price* v. *Pennsylvania R. Co.*, 113 U. S. 218, 222; *Martin* v. *Pittsburg & Lake Erie R. Co.*, 203 U. S. 284, 292–93. See *Ex parte Jackson*, 96 U. S. 727, 732; *In re Rapier*, 143 U. S. 110, 133. And in at least one instance this Court has sustained direct state interference with transmission of the mails where the slight public inconvenience arising therefrom was felt to be far outweighed by inconvenience to a state in the enforcement of its laws which would have resulted from a contrary holding. *United States* v. *Kirby*, 7 Wall. 482, 486.

Appellant also argues that the various federal statutes regulating the terms and conditions of employment of railway mail clerks indicate an intent on the part of Congress to completely occupy the field of regulation applicable to federal postal employees and their labor organizations.[17] Especial reliance is placed on § 652, Title 5, U. S. C., 37 Stat. 555, which provides that "Membership

---

[17] 39 U. S. C. §§ 601–640.

in any . . . organization of postal employees not affiliated with any outside organization imposing an obligation or duty upon them to engage in any strike, or proposing to assist them in any strike, against the United States, having for its objects, among other things, improvements in the condition of labor of its members, including hours of labor and compensation therefor and leave of absence . . . or the presenting by any such person or groups of persons of any grievance or grievances to the Congress . . . shall not constitute or be cause for reduction in rank or compensation or removal . . . from said service." The language of this provision indicates that it had the narrow purpose of prohibiting discrimination against a federal employee because of membership in an organization of employees which did not impose an obligation to strike against the government. This provision can hardly be deemed to indicate an intent on the part of Congress to enter and completely absorb the field of regulation of organizations of federal employees. Congress must clearly manifest an intention to regulate for itself activities of its employees, which are apart from their governmental duties, before the police power of the state is powerless. *Allen-Bradley Local* v. *Wisconsin Board*, 315 U. S. 740, 749, and cases cited. There is no such clear manifestation of Congressional intent to exclude in this case. Nor are we called upon to consider whether Congress, in the exercise of its power over the post offices and post roads, could regulate the appellant organization. Suffice it to say, that we do not find it to have exercised such power so far and thus regulation by the states is not precluded.

The judgment is

*Affirmed.*

MR. JUSTICE RUTLEDGE concurs in the result.

MR. JUSTICE FRANKFURTER, concurring.

The Railway Mail Association is a union of railway clerks. To operate as a union in New York it must obey

the New York Civil Rights Law. That law prohibits such an organization from denying membership in the union by reason of race, color or creed, with all the economic consequences that such denial entails.

Apart from other objections, which are too unsubstantial to require consideration, it is urged that the Due Process Clause of the Fourteenth Amendment precludes the State of New York from prohibiting racial and religious discrimination against those seeking employment. Elaborately to argue against this contention is to dignify a claim devoid of constitutional substance. Of course a State may leave abstention from such discriminations to the conscience of individuals. On the other hand, a State may choose to put its authority behind one of the cherished aims of American feeling by forbidding indulgence in racial or religious prejudice to another's hurt. To use the Fourteenth Amendment as a sword against such State power would stultify that Amendment. Certainly the insistence by individuals on their private prejudices as to race, color or creed, in relations like those now before us, ought not to have a higher constitutional sanction than the determination of a State to extend the area of nondiscrimination beyond that which the Constitution itself exacts.