CITY OF HIGHLAND PARK *v.* FAIR EMPLOYMENT
PRACTICES COMMISSION.

1. MUNICIPAL CORPORATIONS—HOME-RULE CITIES AND VILLAGES—CONSTITUTIONAL LAW—GENERAL STATUTES.

The powers granted to cities and villages under the home-rule provisions of the Constitution are subject to the Constitution and general laws of the State such as the fair employment practices act (Const 1908, art 8, §§ 21, 22; CLS 1956, § 423.301 *et seq.*).

2. CIVIL RIGHTS—PURPOSE OF FAIR EMPLOYMENT PRACTICES ACT.

The purpose of the fair employment practices act is to prevent discrimination in employment based on racial, religious, or ancestral prejudices (CLS 1956, § 423.301 *et seq.*).

3. SAME—FAIR EMPLOYMENT PRACTICES ACT—DUE PROCESS—DISCRIMINATION—VAGUENESS OF STANDARD.

Provision of fair employment practices act that it shall be an unfair employment practice "for any employer, because of race, color, religion, national origin or ancestry of any individual, to refuse to hire or otherwise discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment * * * except where based on a bona fide occupational qualification" *held*, not to set forth a standard on which to determine discrimination that is unconstitutionally

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur, Municipal Corporations § 106.
[2, 3, 5, 6, 7] 10 Am Jur, Civil Rights § 15 *et seq.*
Fair employment statutes designed to eliminate racial, religious, or national origin discrimination in private employment.   44 ALR2d 1138.
[4] 10 Am Jur, Civil Rights § 8.
[8] 3 Am Jur, Appeal and Error § 755.
[9] 42 Am Jur, Public Administrative Law § 197 *et seq.*
[10] 28 Am Jur, Injunctions § 176 *et seq.*
[11] 11 Am Jur, Constitutional Law § 152 *et seq.*
    50 Am Jur, Statutes § 353.
[12] 14 Am Jur, Costs § 91.

vague or indefinite so as to offend the due process clauses of
the State and Federal Constitutions (US Const Ams 5, 14;
Mich Const 1908, art 2, § 16; CLS 1956, § 423.303).

4. WORDS AND PHRASES—DISCRIMINATE.

The word *discriminate,* as used in the fair employment practices
act, means to make a difference in treatment or favor of one
person as compared with others, in favor of one's friends, or
against a special class of persons (CLS 1956, § 423.306).

5. CIVIL RIGHTS — FAIR EMPLOYMENT PRACTICES ACT — DISCRIMINA-
TION.

The fair employment practices act by prohibiting racial, religious,
or ancestral discrimination in relation to employment, seeks to
extend and make more specific rights which were hinted at in
the Declaration of Independence and the Fourteenth Amend-
ment to the Constitution of the United States in an attempt to
afford equality of opportunity (US Const Am 14, § 1; CLS
1956, § 423.301 *et seq.*).

6. CONSTITUTIONAL LAW—STATES—CIVIL RIGHTS—DISCRIMINATION IN
EMPLOYMENT.

A State may protect its workers from exclusion from employment
solely on the basis of race, color, religion, national origin or
ancestry by an organization, functioning under the protection
of the State, which holds itself out to represent the general
business needs of employees (CLS 1956, § 423.301 *et seq.*).

7. SAME—POLICE POWER—DUE PROCESS—FAIR EMPLOYMENT PRAC-
TICES ACT.

State fair employment practices act, which makes unlawful the
discrimination in employment based solely on race, color, re-
ligion, national origin or ancestry, which provides for complaint
and investigation by a designated administrative agency for
hearings upon authorized complaints before an administrative
board or commission, for entry of cease and desist orders to an
employer found guilty of the forbidden discriminatory practice
and for enforcement in the courts, is a constitutional exercise
of the police power, since it does not set forth standards which
are not clear, definite, and understandable, nor does it violate
the due process clauses of the Federal or State Constitutions
(US Const Am 14; Mich Const 1908, art 2, § 16; CLS 1956,
§ 423.301 *et seq.*).

8. EQUITY—MOTION TO DISMISS—QUESTIONS DETERMINABLE—CON-
STITUTIONAL LAW.

Claims of unconstitutionality of a statute in that it violates the
due process clauses of the Federal and State Constitutions or

that it sets forth vague and uncertain standards for determination of violation were properly determinable on motion to dismiss bill to declare the act unconstitutional and to enjoin proceedings on complaint filed thereunder.

9. Appeal and Error—Questions Reviewable—Premature Appeal —Fair Employment Practices Act—De Novo Review.
    Whether or not review *de novo* provisions of fair employment practices act are valid is not determined on appeal from order granting motion to dismiss employer's bill to declare the act unconstitutional and to enjoin proceedings on complaint filed thereunder, where plaintiffs herein have not exhausted their administrative remedies, the appeal herein being premature as to such question (CLS 1956, § 423.308).

10. Injunction—Pending Proceedings in Administrative Tribunals.
    Courts of equity do not ordinarily employ the injunctive power to restrain the prosecution of proceedings pending in administrative tribunals.

11. Statutes — Construction — Severability — Fair Employment Practices Act.
    *De novo* review provisions of the fair employment practices act are construed as severable (CL 1948, § 8.5; CLS 1956, § 423-.308).

12. Costs—Public Question—Fair Employment Practices Act.
    No costs are allowed on appeal in suit to declare the fair employment practices act unconstitutional and to enjoin the prosecution of proceedings pending on complaint filed thereunder, public questions being involved (CLS 1956, § 423.301 *et seq.*).

Appeal from Wayne; Gilmore (Horace W.), J. Submitted June 6, 1961. (Docket No. 2, Calendar No. 48,811.) Decided November 30, 1961.

Bill by the City of Highland Park, a municipal corporation, Highland Park General Hospital, a Michigan corporation, and the Highland Park Civil Service Board against the Fair Employment Practices Commission, certain of its officials, and Irma B. Ellison to declare the fair employment practices act unconstitutional and to enjoin proceedings on a com-

plaint filed thereunder.   Bill dismissed on motion.
Plaintiffs appeal.   Affirmed.

*Colin J. McRae,* City Attorney, and *George W. Moore,* Assistant City Attorney, for plaintiffs.

*Paul L. Adams,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, and *Gerald David White,* Assistant Attorney General, for defendants.

EDWARDS, J.   In this case plaintiffs seek to have the Michigan fair employment practices statute declared unconstitutional.   To the extent that this suit brings constitutional issues properly before this Court, we find no prohibition in the Federal or State Constitution which renders the statute invalid.

This is an appeal from dismissal of a bill of complaint in which plaintiff city of Highland Park seeks to have defendant fair employment practices commission enjoined from hearing a complaint.   The complainant before the commission is one Irma B. Ellison (a defendant in this case) who claimed violation of the fair employment practices statute (CLS 1956, § 423.301 *et seq.* [Stat Ann 1960 Rev § 17.458 (1) *et seq.*]) in relation to her efforts to secure employment at the plaintiff Highland Park General Hospital, operated by plaintiff city of Highland Park.

The bill of complaint alleges that the fair employment practices commission is without authority to hold the hearing contemplated because the statute creating it is unconstitutional in that it invades municipal authority, establishes no standards, and contains invalid appeal provisions.

The defendant fair employment practices commission filed a motion to dismiss the bill of complaint, contending that plaintiffs' action is founded upon anticipated harm which has not happened, and may

well not happen; further, that the statute is constitutional as a whole and, even if the appeal provisions are held unconstitutional, they are entirely severable.

The circuit judge heard plaintiffs' motion for a temporary injunction and defendants' motion to dismiss the bill of complaint at the same time. He entered a written opinion holding the statute constitutional and dismissed the amended bill of complaint.

The amended bill of complaint recited several grounds for claiming unconstitutionality of the statute. In paragraph 22(E) it asserts the statute is unconstitutional because it invades the rights of self-government granted municipalities under the provisions of the Constitution.

No provision of the Michigan Constitution is cited to us as being violated in this regard. But we assume that appellants' reference is to article 8, §§ 21 and 22, of the Michigan Constitution of 1908. These 2 sections provide certain powers for cities and villages (including the right to operate hospitals). These powers are, however, subject to an important restriction which is underlined below:

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, *subject to the Constitution and general laws of this State.*"

The fair employment practices act sets forth a prohibition against discrimination in employment based on "race, color, religion, national origin or ancestry." The prohibition is generally applicable. Plainly, the Michigan Constitution makes the cities of this State subject to such general laws as the statute before us.

In paragraph 22(F) of the amended bill of complaint, plaintiffs-appellants contend that the fair employment practices statute is unconstitutional because

"it fails to set forth any standards on which to determine discrimination but being vague and indefinite and providing for liberal construction, it illegally permits an unfounded belief of discrimination in the mind of a person with a discrimination complex to be grounds for complaint under said purported act."

We presume (although no constitutional section is cited) that the claim is such indefiniteness as to offend the due process clauses of the State and Federal Constitutions.[1]

The key sentence in the statute is:

"It shall be an unfair employment practice:

"(a) For any employer, because of the race, color, religion, national origin or ancestry of any individual, to refuse to hire or otherwise to discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment, or any matter, directly or indirectly related to employment, except where based on a bona fide occupational qualification."     CLS 1956, § 423.303 (Stat Ann 1960 Rev § 17.458[3]).

We do not find anything unconstitutionally vague or indefinite about the crucial language we have quoted. The purpose of the statute is to prevent discrimination in employment based on racial, religious, or ancestral prejudices.

The word "discriminate" as used in the Michigan fair employment practices statute is no newcomer to law. Discrimination between customers as to prices is forbidden as unfair competition. *Federal Trade Commission* v. *Morton Salt Co.*, 334 US 37 (68 S Ct

---

[1] Mich Const (1908), art 2, § 16; US Const, Am 5; US Const, Am 14, § 1.

822, 92 L ed 1196, 1 ALR2d 260). Discrimination against a particular fisherman in refusing to store his nets in a public storage warehouse without just cause was held to violate a Washington statute. *Port of Seattle* v. *Luketa,* 12 Wash2d 439 (121 P2d 951). A prohibition against discrimination against interstate commerce was held to prevent a railroad from giving unduly low rates to intrastate passengers. *Railroad Commission of Wisconsin* v. *Chicago, B. & Q. R. Co.,* 257 US 563 (42 S Ct 232, 66 L ed 371, 22 ALR 1086). And refusal to hire prospective employees solely because of their union membership or activities was held a discrimination forbidden by the national labor relations act. *Phelps Dodge Corp.* v. *National Labor Relations Board,* 313 US 177 (61 S Ct 845, 85 L ed 1271; 133 ALR 1217).

Webster's New International Dictionary (2d ed), p 745, defines the verb "discriminate":

"2. To make a difference in treatment or favor (of one as compared with others); as, to *discriminate* in favor of one's friends; to *discriminate* against a special class."

By prohibiting racial, religious, or ancestral discrimination in relation to employment, the statute seeks to extend and make more specific rights which have at least been hinted at in the more general words of the Declaration of Independence[2] and the Fourteenth Amendment[3] to the Constitution of the United States. It is an effort to transpose into law that

---

[2] "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights; that among these are Life, Liberty, and the pursuit of Happiness." Declaration of Independence.

[3] "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." US Const, Am 14, § 1.

cherished portion of the American dream which is referred to in the pregnant phrase "equality of opportunity."

Twenty States of the Union have now adopted such laws.[4] An examination of these statutes shows a similarity of language to that complained of by appellants.

While no one of these statutes appears previously to have been subjected to full-scale constitutional attack, the provisions of the New York civil rights law, which forbade any labor union "to deny  *  *  * membership by reason of race, color or creed," has been held constitutional by the United States supreme court. *Railway Mail Association* v. *Corsi*, 326 US 88 (65 S Ct 1483, 89 L ed 2072). As to a union's obligation under the Federal railway labor act (45 USC [1958 ed], § 151 *et seq.*), see *Steele* v. *Louisville & N. R. Co.*, 323 US 192 (65 S Ct 226, 89 L ed 173). The opinion of the court in the *Railway Mail Case* held (p 94):

---

[4] Alaska—Alaska Comp Laws Ann § 43–5–1 *et seq.* (1958 Cum Supp).

California—Deering's Calif Code Ann §§ 1410–1432 (1961 Cum Supp).

Colorado—Rev Stat Ann § 81–19–1 *et seq.*

Connecticut—Conn Gen Stat Ann § 31–122 *et seq.*

Delaware—CCH Labor Law Reptr, 1 State Laws, para 47,500.

Illinois—S–H Ill Ann Stat, ch 48, § 851 *et seq.* (Sept. 1961 Supp #5).

Indiana—Burns Ind Stat Ann § 40–2307 *et seq.* (1961 Cum Supp).

Kansas—Kan Gen Stat, ch 44, § 1001 *et seq.* (1959 Supp).

Massachusetts—Mass Ann Laws, ch 151B, §§ 1–10.

Michigan—CLS 1956, § 423.301 *et seq.* (Stat Ann 1960 Rev § 17.458[1] *et seq.*).

Minnesota—Minn Stat Ann § 363.01 *et seq.*

New Jersey—NJ Stat Ann § 18:25–12 *et seq.* (1960 Supp).

New Mexico—NM Stat Ann § 59–4–1 *et seq.*

New York—McKinney's Consol Laws of NY, Exec Law §§ 290–301.

Ohio—Page's Ohio Rev Code Ann, title 41, ch 4112 (1961 Supp).

Oregon—Or Rev Stat § 659.010 *et seq.*

Pennsylvania—Purdon's Penn Stat Ann, title 43, § 951 *et seq.* (1960 Cum Supp).

Rhode Island—Gen Laws Ann § 28–5–1 *et seq.*

Washington—Rev Code § 49.60.010 *et seq.*

Wisconsin—West's Wis Stat Ann § 111.31 *et seq.* (1961 Cum Supp).

"We see no constitutional basis for the contention that a State cannot protect workers from exclusion solely on the basis of race, color or creed by an organization, functioning under the protection of the State, which holds itself out to represent the general business needs of employees."

And Mr. Justice Frankfurter's concurring opinion dealt further with a "due process" objection (p 98) :

"Of course a State may leave abstention from such discriminations to the conscience of individuals. On the other hand, a State may choose to put its authority behind one of the cherished aims of American feeling by forbidding indulgence in racial or religious prejudice to another's hurt. To use the Fourteenth Amendment as a sword against such State power would stultify that Amendment. Certainly the insistence by individuals on their private prejudices as to race, color or creed, in relations like those now before us, ought not to have a higher constitutional sanction than the determination of a State to extend the area of nondiscrimination beyond that which the Constitution itself exacts."

We find the language of the Michigan fair employment practices statute (applicable, of course, in this instance to employment) somewhat more specific than that which the United States supreme court upheld in the *Railway Mail Association Case, supra.* It exempts discrimination between applicants or employees based on "a bona fide occupational qualification," and in effect forbids discrimination based solely on "the race, color, religion, national origin or ancestry."

It is relevant likewise to note that the Michigan fair employment practices statute parallels in form and operation the structure of the national labor relations act (29 USC [1958 ed], § 151 *et seq.*). Both contain declarations making certain discriminatory practices in employment to be unlawful. Both pro-

vide for complaint and investigation by a designated administrative agency. Both provide for hearings upon authorized complaints before an administrative board or commission. Both provide power in the board or commission to enter cease and desist orders directed to an employer found to be guilty of the forbidden discriminatory practice. Both provide, on refusal, for the board or commission to seek enforcement in the courts.

The national labor relations act has, of course, been upheld against all arguments of unconstitutionality. *National Labor Relations Board* v. *Jones & Laughlin Steel Corporation,* 301 US 1 (57 S Ct 615, 81 L ed 893, 108 ALR 1352). Comparing the unfair employment practice language of the Michigan fair employment practices statute[5] to the unfair labor practice language of the national labor relations act,[6] we feel that the standards of the former are at least as clear, definite and understandable as those of the latter.

Further, in at least 1 case, the United States supreme court has indicated a view that the evil of race discrimination is an even more legitimate subject of legislation than discrimination against union membership.

"The desire for fair and equitable conditions of employment on the part of persons of any race, color, or persuasion, and the removal of discriminations

---

5 "It shall be an unfair employment practice:

"(a) For any employer, because of the race, color, religion, national origin or ancestry of any individual, to refuse to hire or otherwise to discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment, or any matter, directly or indirectly related to employment, except where based on a bona fide occupational qualification." CLS 1956, § 423.303 (Stat Ann 1960 Rev § 17.458[3]).

6 "(a) It shall be an unfair labor practice for an employer—
* * *
"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." National labor relations act, 29 USC (1958 ed), § 158.

against them by reason of their race or religious beliefs is quite as important to those concerned as fairness and equity in terms and conditions of employment can be to trade or craft unions or any form of labor organization or association. Race discrimination by an employer may reasonably be deemed more unfair and less excusable than discrimination against workers on the ground of union affiliation." *New Negro Alliance* v. *Sanitary Grocery Co.,* 303 US 552, 561 (58 S Ct 703, 82 L ed 1012).

While this reasoning rests on analogy, Michigan is not unfamiliar with statutes which directly restrain discrimination of a racial or religious nature. Since 1885 it has been a criminal offense for any owner, proprietor, or employee of any place of public accommodation to refuse, or "deny to any person any of the accommodations, advantages, facilities and privileges thereof * * * on account of race, creed or color."[7] The constitutionality of this statute has been upheld as a lawful exercise of the State's police power. *Bolden* v. *Grand Rapids Operating Corporation,* 239 Mich 318 (53 ALR 183).

See, also, *People* v. *Bob-Lo Excursion Company,* 317 Mich 686; *People* v. *King,* 110 NY 418 (18 NE 245, 1 LRA 293, 6 Am St Rep 389).

The legal history of this statute offers no record of challenge or complaint based on grounds of vagueness or lack of clarity.

Certainly there is nothing novel or unconstitutional in the fact that the statute authorizes the filing of complaints, some of which may later prove to be unfounded. Indeed, this is a characteristic of practically every form of litigation, civil or criminal. We can conceive of no violation of due process in the fact that defendants are subjected to a complaint of violation of a particular legal standard when they

[7] See, currently, CLS 1956, § 750.147 (Stat Ann 1959 Cum Supp. § 28.344).—Reporter.

have the right to a prompt and fair hearing provided by the same statute.

We conclude that the language complained about in the Michigan fair employment practices statute is clear and understandable within constitutional limitations imposed by either State or Federal "due process" clauses.

Neither of these paragraphs of the amended bill of complaint which we have dealt with up to date presented any issues of fact for determination. The claims of unconstitutionality contained therein could properly have been determined in this chancery proceeding on a motion to dismiss the bill. *General Motors Corp.* v. *Attorney General,* 294 Mich 558 (130 ALR 429); *Lewis* v. *Michigan State Board of Dentistry,* 277 Mich 334; *Fitzpatrick* v. *Liquor Control Commission,* 316 Mich 83 (172 ALR 608).

As to these 2 paragraphs dealt with above, it seems likely that the circuit judge considered them waived by the oral arguments presented before him since no reference to either contention is made in his opinion. Nonetheless, we deal with them since the language of appellants' stated questions and arguments seems designed to preserve these issues for our review.

The main thrust of appellants' amended bill of complaint and the principal question dealt with by the circuit judge's opinion pertain to the provisions of the statute which in terms grant to any aggrieved party an appeal *de novo* to the circuit court from orders of the commission (CLS 1956, § 423.308 [Stat Ann 1960 Rev § 17.458(8)]). Plaintiffs-appellants contend that such a *de novo* appeal provision has been held unconstitutional by this Court in *In re Fredericks,* 285 Mich 262 (125 ALR 259), and that the unconstitutionality affects and invalidates the entire statute.

The circuit judge, relying on the *Fredericks Case,* rejected this argument on the grounds that the appeal provisions of the statute were such as to be amenable to a construction which granted an appeal on the record comparable to an appeal in certiorari.

We affirm dismissal of plaintiffs' amended bill of complaint without determination of this third question.

We have previously upheld those portions of the statute which grant the commission jurisdiction to entertain complaints and to conduct hearings.

It is obvious, since as yet there has been no hearing and plaintiffs have not had any order directed to them by defendants, that plaintiffs have not as yet exhausted their administrative remedies. For all we know, the order actually entered after hearing may be dismissal of defendant Ellison's complaint and may serve to obviate any appeal. Plaintiffs' concern with their right of appeal is entirely premature at this point.

Courts of equity do not ordinarily employ the injunctive power to restrain the prosecution of proceedings pending in administrative tribunals. *Norman* v. *Board of Examiners of Barbers,* 364 Mich 360; *Aircraft & Diesel Equipment Corp.* v. *Hirsch,* 331 US 752 (67 S Ct 1493, 91 L ed 1796).

Further, we regard the appeal provisions as severable from the balance of the statute, and we follow the statutory mandate to so construe them. CL 1948, § 8.5 (Stat Ann 1952 Rev § 2.216).

It may be noted that this identical issue pertaining to the appeal provisions is posed squarely in another appeal which was decided this date, entitled *Lesniak* v. *Fair Employment Practices Commission,* 364 Mich 495.

No other meritorious issue is presented.

Affirmed.   No costs, public questions being involved.

DETHMERS, C. J., and CARR, KELLY, BLACK, KAVANAGH, and SOURIS, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.