Justice THOMAS, concurring.
The Court vacates and remands to have the Court of Appeals determine "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." Ante, at 1550. In defining what constitutes a concrete injury, the Court explains that "concrete" means " 'real,' " and "not 'abstract,' " but is not "necessarily synonymous with 'tangible.' " Ante, at 1548 - 1549.
I join the Court's opinion. I write separately to explain how, in my view, the injury-in-fact requirement applies to different types of rights. The judicial power of common-law courts was historically limited depending on the nature of the plaintiff's suit. Common-law courts more readily entertained suits from private plaintiffs who alleged a violation of their own rights, in contrast to private plaintiffs who asserted claims vindicating public rights. Those limitations persist in modern standing doctrine.
I
A
Standing doctrine limits the "judicial power" to " 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.' " Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 774, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000)(quoting Steel Co. v. Citizens for a Better Environment , 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). To understand the limits that standing imposes on "the judicial Power," therefore, we must "refer directly to the traditional, fundamental *1551 limitations upon the powers of common-law courts." Honig v. Doe, 484 U.S. 305, 340, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)(Scalia, J., dissenting). These limitations preserve separation of powers by preventing the judiciary's entanglement in disputes that are primarily political in nature. This concern is generally absent when a private plaintiff seeks to enforce only his personal rights against another private party.
Common-law courts imposed different limitations on a plaintiff's right to bring suit depending on the type of right the plaintiff sought to vindicate. Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more. "Private rights" are rights "belonging to individuals, considered as individuals." 3 W. Blackstone, Commentaries *2 (hereinafter Blackstone). "Private rights" have traditionally included rights of personal security (including security of reputation), property rights, and contract rights. See 1 id., at *130-*139; Woolhander & Nelson, Does History Defeat Standing Doctrine?, 102 Mich. L. Rev. 689, 693 (2004). In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a de facto injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy. See Entick v. Carrington, 2 Wils. K.B. 275, 291, 95 Eng. Rep. 807, 817 (1765). Many traditional remedies for private-rights causes of action-such as for trespass, infringement of intellectual property, and unjust enrichment-are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right. See Brief for Restitution and Remedies Scholars as Amici Curiae 6-18; see also Webb v. Portland Mfg. Co., 29 F.Cas. 506, 508 (No. 17,322) (Me.1838) (stating that a legal injury "imports damage in the nature of it" (internal quotation marks omitted)).
Common-law courts, however, have required a further showing of injury for violations of "public rights"-rights that involve duties owed "to the whole community, considered as a community, in its social aggregate capacity." 4 Blackstone *5. Such rights include "free navigation of waterways, passage on public highways, and general compliance with regulatory law." Woolhander & Nelson, 102 Mich. L. Rev., at 693. Generally, only the government had the authority to vindicate a harm borne by the public at large, such as the violation of the criminal laws. See id., at 695-700. Even in limited cases where private plaintiffs could bring a claim for the violation of public rights, they had to allege that the violation caused them "some extraordinary damage, beyond the rest of the [community]." 3 Blackstone *220 (discussing nuisance); see also Commonwealth v. Webb, 27 Va. 726, 729 (Gen.Ct.1828).* An action to redress a public nuisance, for example, was historically considered an action to vindicate the violation of a public right at common law, lest "every subject in the kingdom" be able to "harass the offender with separate actions." 3 Blackstone *219; see also 4 id., at *167 (same). But if the plaintiff could allege "special damage" as *1552 the result of a nuisance, the suit could proceed. The existence of special, individualized damage had the effect of creating a private action for compensatory relief to an otherwise public-rights claim. See 3 id., at *220. Similarly, a plaintiff had to allege individual damage in disputes over the use of public lands. E.g., Robert Marys's Case, 9 Co. Rep. 111b, 112b, 77 Eng. Rep. 895, 898-899 (K.B. 1613) (commoner must establish not only injuria [legal injury] but also damnum [damage] to challenge another's overgrazing on the commons).
B
These differences between legal claims brought by private plaintiffs for the violation of public and private rights underlie modern standing doctrine and explain the Court's description of the injury-in-fact requirement. "Injury in fact" is the first of three "irreducible" requirements for Article III standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The injury-in-fact requirement often stymies a private plaintiff's attempt to vindicate the infringement of public rights. The Court has said time and again that, when a plaintiff seeks to vindicate a public right, the plaintiff must allege that he has suffered a "concrete" injury particular to himself. See Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 221-223, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)(explaining this where plaintiffs sought to enforce the Incompatibility Clause, Art. I, § 6, cl. 2, against Members of Congress holding reserve commissions in the Armed Forces); see also Lujan, supra, at 572-573, 112 S.Ct. 2130(evaluating standing where plaintiffs sought to enforce the Endangered Species Act); Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 183-184, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)(Clean Water Act). This requirement applies with special force when a plaintiff files suit to require an executive agency to "follow the law"; at that point, the citizen must prove that he "has sustained or is immediately in danger of sustaining a direct injury as a result of that [challenged] action and it is not sufficient that he has merely a general interest common to all members of the public." Ex parte Levitt, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937)(per curiam ). Thus, in a case where private plaintiffs sought to compel the U.S. Forest Service to follow certain procedures when it regulated "small fire-rehabilitation and timber-salvage projects," we held that "deprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing," even if "accorded by Congress." Summers v. Earth Island Institute, 555 U.S. 488, 490, 496-497, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).
But the concrete-harm requirement does not apply as rigorously when a private plaintiff seeks to vindicate his own private rights. Our contemporary decisions have not required a plaintiff to assert an actual injury beyond the violation of his personal legal rights to satisfy the "injury-in-fact" requirement. See, e.g., Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)(holding that nominal damages are appropriate when a plaintiff's constitutional rights have been infringed but he cannot show further injury).
The separation-of-powers concerns underlying our public-rights decisions are not implicated when private individuals sue to redress violations of their own private rights. But, when they are implicated, standing doctrine keeps courts out of political disputes by denying private litigants the right to test the abstract legality of government action. See Schlesinger, supra, at 222, 94 S.Ct. 2925. And by limiting *1553 Congress' ability to delegate law enforcement authority to private plaintiffs and the courts, standing doctrine preserves executive discretion. See Lujan, supra, at 577, 112 S.Ct. 2130(" 'To permit Congress to convert the undifferentiated public interest in executive officers' compliance with the law into an 'individual right' vindicable in the courts is to permit Congress to transfer from the President to the courts the Chief Executive's most important constitutional duty, to 'take Care that the Laws be faithfully executed' "). But where one private party has alleged that another private party violated his private rights, there is generally no danger that the private party's suit is an impermissible attempt to police the activity of the political branches or, more broadly, that the legislative branch has impermissibly delegated law enforcement authority from the executive to a private individual. See Hessick, Standing, Injury in Fact, and Private Rights, 93 Cornell L. Rev. 275, 317-321 (2008).
C
When Congress creates new private causes of action to vindicate private or public rights, these Article III principles circumscribe federal courts' power to adjudicate a suit alleging the violation of those new legal rights. Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights. See Warth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 373-374, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)(recognizing standing for a violation of the Fair Housing Act); Tennessee Elec. Power Co. v. TVA, 306 U.S. 118, 137-138, 59 S.Ct. 366, 83 L.Ed. 543 (1939)(recognizing that standing can exist where "the right invaded is a legal right,-one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege"). A plaintiff seeking to vindicate a public right embodied in a federal statute, however, must demonstrate that the violation of that public right has caused him a concrete, individual harm distinct from the general population. See Lujan, supra, at 578, 112 S.Ct. 2130(noting that, whatever the scope of Congress' power to create new legal rights, "it is clear that in suits against the Government, at least, the concrete injury requirement must remain"). Thus, Congress cannot authorize private plaintiffs to enforce public rights in their own names, absent some showing that the plaintiff has suffered a concrete harm particular to him.
II
Given these principles, I agree with the Court's decision to vacate and remand. The Fair Credit Reporting Act creates a series of regulatory duties. Robins has no standing to sue Spokeo, in his own name, for violations of the duties that Spokeo owes to the public collectively, absent some showing that he has suffered concrete and particular harm. See supra, at 1546 - 1547. These consumer protection requirements include, for example, the requirement to "post a toll-free telephone number on [Spokeo's] website through which consumers can request free annual file disclosures." App. 23, First Amended Complaint ¶ 74; see 15 U.S.C. § 1681j; 16 CFR § 610.3(a)(1) (2010).
But a remand is required because one claim in Robins' complaint rests on a statutory provision that could arguably establish a private cause of action to vindicate the violation of a privately held right. Section 1681e(b)requires Spokeo to "follow reasonable procedures to assure maximum *1554 possible accuracy of the information concerning the individual about whom the report relates. " § 1681e(b)(emphasis added). If Congress has created a private duty owed personally to Robins to protect his information, then the violation of the legal duty suffices for Article III injury in fact. If that provision, however, vests any and all consumers with the power to police the "reasonable procedures" of Spokeo, without more, then Robins has no standing to sue for its violation absent an allegation that he has suffered individualized harm. On remand, the Court of Appeals can consider the nature of this claim.
Justice GINSBURG, with whom Justice SOTOMAYORjoins, dissenting.
In the Fair Credit Reporting Act of 1970 (FCRA or Act), 15 U.S.C. § 1681 et seq., Congress required consumer reporting agencies, whenever preparing a consumer report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." § 1681e(b). To promote adherence to the Act's procedural requirements, Congress granted adversely affected consumers a right to sue noncomplying reporting agencies. § 1681n (willful noncompliance); § 1681o (negligent noncompliance).[1] Thomas Robins instituted suit against Spokeo, Inc., alleging that Spokeo was a reporting agency governed by the FCRA, and that Spokeo maintains on its Web site an inaccurate consumer report about Robins. App. 13.
In particular, Robins alleged that Spokeo posted "a picture ... purport [ing] to be an image of Robins [that] was not in fact [of him]," and incorrectly reported that Robins "was in his 50s, ... married, ... employed in a professional or technical field, and ... has children." Id., at 14. Robins further alleged that Spokeo's profile of him continues to misrepresent "that he has a graduate degree, that his economic health is 'Very Strong [,]' and that his wealth level [is in] the 'Top 10%.' " Ibid. Spokeo displayed that erroneous information, Robins asserts, when he was "out of work" and "actively seeking employment." Ibid. Because of the misinformation, Robins stated, he encountered "[imminent and ongoing] actual harm to [his] employment prospects." Ibid.[2] As Robins elaborated on brief, Spokeo's report made him appear overqualified for jobs he might have gained, expectant of a higher salary than employers would be willing to pay, and less mobile because of family responsibilities. See Brief for Respondent 44.
I agree with much of the Court's opinion. Robins, the Court holds, meets the particularity requirement for standing under Article III. See ante, at 1548, 1550 (remanding only for concreteness inquiry). The Court acknowledges that Congress has the authority to confer rights and delineate claims for relief where none existed before. Ante, at 1549; see Federal Election Comm'n v. Akins, 524 U.S. 11, 19-20, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998)(holding that inability to procure information to which Congress has created a right in the Federal Election Campaign Act of 1971 qualifies as concrete injury satisfying Article III's standing requirement); Public Citizen v. Department *1555 of Justice, 491 U.S. 440, 449, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989)(holding that plaintiff advocacy organizations' inability to obtain information that Congress made subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue"); Havens Realty Corp. v. Coleman, 455 U.S. 363, 373, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)(identifying, as Article III injury, violation of plaintiff's right, secured by the Fair Housing Act, to "truthful information concerning the availability of housing").[3] Congress' connection of procedural requirements to the prevention of a substantive harm, the Court appears to agree, is "instructive and important." Ante, at 1549; see Lujan v. Defenders of Wildlife, 504 U.S. 555, 580, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)(KENNEDY, J., concurring in part and concurring in judgment) ("As Government programs and policies become more complex and far reaching, we must be sensitive to the articulation of new rights of action...."); Brief for Restitution and Remedies Scholars et al. as Amici Curiae 3 ("Congress cannot authorize individual plaintiffs to enforce generalized rights that belong to the whole public. But Congress can create new individual rights, and it can enact effective remedies for those rights."). See generally Sunstein, Informational Regulation and Informational Standing: Akins and Beyond, 147 U. Pa. L. Rev. 613 (1999).
I part ways with the Court, however, on the necessity of a remand to determine whether Robins' particularized injury was "concrete." See ante, at 1550. Judged by what we have said about "concreteness," Robins' allegations carry him across the threshold. The Court's opinion observes that time and again, our decisions have coupled the words "concrete and particularized." Ante, at 1548 (citing as examples, Susan B. Anthony List v. Driehaus, 573 U.S. ----, ----, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014); Summers v. Earth Island Institute, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009); Sprint Communications Co. v. APCC Services, Inc., 554 U.S. 269, 274, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008); Massachusetts v. EPA, 549 U.S. 497, 517, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007)). True, but true too, in the four cases cited by the Court, and many others, opinions do not discuss the separate offices of the terms "concrete" and "particularized."
Inspection of the Court's decisions suggests that the particularity requirement bars complaints raising generalized grievances, seeking relief that no more benefits the plaintiff than it does the public at large. See, e.g., Lujan, 504 U.S., at 573-574, 112 S.Ct. 2130(a plaintiff "seeking relief that no more directly and tangibly benefits him than it does the public at large does not state an Article III case or controversy" (punctuation omitted)); Perkins v. Lukens Steel Co., 310 U.S. 113, 125, 60 S.Ct. 869, 84 L.Ed. 1108 (1940)(plaintiffs lack standing because they failed to show injury to "a particular right of their own, as distinguished from the public's interest in the administration of the law"). Robins' claim does not present a question of that character. He seeks redress, not for harm to the citizenry, but for Spokeo's spread of misinformation specifically about him.
Concreteness as a discrete requirement for standing, the Court's decisions indicate, *1556 refers to the reality of an injury, harm that is real, not abstract, but not necessarily tangible. See ante, at 1548 - 1549; ante, at 1543 ( THOMAS , J., concurring). Illustrative opinions include Akins, 524 U.S., at 20, 118 S.Ct. 1777("[C]ourts will not pass upon abstract, intellectual problems, but adjudicate concrete, living contests between adversaries." (internal quotation marks and alterations omitted)); Diamond v. Charles, 476 U.S. 54, 67, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986)(plaintiff's "abstract concern does not substitute for the concrete injury required by Art [icle] III" (internal quotation marks and ellipsis omitted)); Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)("Plaintiffs must demonstrate a personal stake in the outcome.... Abstract injury is not enough." (internal quotation marks omitted)); Babbitt v. Farm Workers, 442 U.S. 289, 297-298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)("The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernable by any precise test. The basic inquiry is whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." (citation, some internal quotation marks, and ellipsis omitted)); Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)( "organization's abstract concern ... does not substitute for the concrete injury required by Art. III"); California Bankers Assn. v. Shultz, 416 U.S. 21, 69, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974)("There must be ... concrete adverseness"; "[a]bstract injury is not enough." (internal quotation marks omitted)); Railway Mail Assn. v. Corsi, 326 U.S. 88, 93, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945)(controversy must be "definite and concrete, not hypothetical or abstract"); Coleman v. Miller, 307 U.S. 433, 460, 59 S.Ct. 972, 83 L.Ed. 1385 (1939)(opinion of Frankfurter, J.) ("[I]t [is] not for courts to pass upon ... abstract, intellectual problems but only ... concrete, living contest [s] between adversaries call[ing] for the arbitrament of law.").
Robins would not qualify, the Court observes, if he alleged a "bare" procedural violation, ante, at 1549, one that results in no harm, for example, "an incorrect zip code," ante, at 1550. Far from an incorrect zip code, Robins complains of misinformation about his education, family situation, and economic status, inaccurate representations that could affect his fortune in the job market. See Brief for Center for Democracy & Technology et al. as Amici Curiae 13 (Spokeo's inaccuracies bore on Robins' "ability to find employment by creating the erroneous impression that he was overqualified for the work he was seeking, that he might be unwilling to relocate for a job due to family commitments, or that his salary demands would exceed what prospective employers were prepared to offer him."); Brief for Restitution and Remedies Scholars et al. as Amici Curiae 35 ("An applicant can lose [a] job for being over-qualified; a suitor can lose a woman if she reads that he is married."). The FCRA's procedural requirements aimed to prevent such harm. See 115 Cong. Rec. 2410-2415 (1969). I therefore see no utility in returning this case to the Ninth Circuit to underscore what Robins' complaint already conveys concretely: Spokeo's misinformation "cause[s] actual harm to [his] employment prospects." App. 14.
* * *
For the reasons stated, I would affirm the Ninth Circuit's judgment.

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

The well-established exception for qui tam actions allows private plaintiffs to sue in the government's name for the violation of a public right. See Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 773-774, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

Congress added the right of action for willful violations in 1996 as part of the Consumer Credit Reporting Reform Act, 110 Stat. 3009-426.

Because this case remains at the pleading stage, the court of first instance must assume the truth of Robins' factual allegations. In particular, that court must assume, subject to later proof, that Spokeo is a consumer reporting agency under 15 U.S.C. § 1681a(f)and that, in preparing consumer reports, Spokeo does not employ reasonable procedures to ensure maximum possible accuracy, in violation of the FCRA.

Just as the right to truthful information at stake in Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), was closely tied to the Fair Housing Act's goal of eradicating racial discrimination in housing, so the right here at stake is closely tied to the FCRA's goal of protecting consumers against dissemination of inaccurate credit information about them.