SEMINOLE TRIBE OF FLORIDA, an Organized Tribe of Indians as recognized under and by the laws of the United States

v.

Robert BUTTERWORTH, the duly elected Sheriff of Broward County, Florida.

No. 79–6680–Civ–NCR.

United States District Court,
S. D. Florida,
Fort Lauderdale Division.

May 6, 1980.

Stephen H. Whilden, Hollywood, Fla. by Marion Sibley, Miami Beach, Fla., for Seminole Tribe of Florida.

Philip S. Shailer, Ft. Lauderdale, Fla., Jim Smith, Atty. Gen. by Brian E. Norton, Asst. Atty. Gen., Tallahassee, Fla., for defendant.

## AMENDED ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ROETTGER, District Judge.

Plaintiff, the Seminole Indian Tribe of Florida, has requested this court to enjoin permanently the Sheriff of Broward County from enforcing Florida's bingo statute on Indian Land.[1] This lawsuit follows considerable investment of capital by plaintiff Tribe in a bingo hall facility constructed and presently operating on the Seminole Reservation in Broward County.[2] This particular Seminole Reservation is located about 7 air miles southwest of downtown Fort Lauderdale and is now surrounded by urban growth. According to the pretrial stipulation on file, the Tribe's bingo hall cost approximately $900,000 to construct.

The Tribe's bingo operation is clearly in violation of *Fla.Stat.* § 849.093 in several respects.[3] First the statute permits the operation of a bingo hall by a qualified organ-

---

1. *Fla.Stat.* § 849.093 provides in pertinent part:
(3) The number of days during which such organizations as are authorized hereunder may conduct bingo or guest games per week shall not exceed two.
(4) No jackpot shall exceed the value of $100 in actual money or its equivalent, and there shall be no more than one jackpot in any one night.
(5) There shall be only one prize or jackpot on any one day of play of $100. All other game prizes shall not exceed $25.
(6) Each person involved in the conduct of any bingo or guest game must be a resident of the community where the organization is located and a bona fide member of the organization sponsoring such game and shall not be compensated in any way for operation of said bingo or guest game.

2. In December, 1979, this court entered a preliminary injunction against Sheriff Butter-

worth, which permitted the Bingo Hall to open. Apparently, it has continued to operate since that time.

3. Section 2 of the Tribe's Bingo Ordinance provides:

Operations—
(a) It shall be unlawful for anyone to perform, conduct, operate, maintain or supervise a bingo game or a series of bingo games except the Seminole Tribe of Florida.
(b) Days of Operation—
Bingo games may be conducted each and every day of the week and at any hour of the day or night at the discretion of the Tribe provided that the Tribe shall operate such games not less than four (4) days per week and there shall be no limit as to prize money for any single game or session.

ization no more than two days per week. The Tribe's hall is in operation six days per week. Second, the statute proscribes more than one jackpot on any given night and limits it to a value of $100.00 or less. The Tribe's prizes exceed both limitations. Also, the statute prohibits the use of paid employees by the bingo operator. The Tribe pays its hall employees.

The Sheriff of Broward County, Robert Butterworth, has stated his intention to fulfill his obligation as this county's chief law enforcement officer. He intends to enforce *Fla.Stat.* § 849.093 by making arrests in the case of any violations.

Because a strikingly similar case was dismissed by the Ninth Circuit Court of Appeals for lack of "case or controversy," *Rincon Band of Mission Indians v. County of San Diego*, 495 F.2d 1 (9th Cir. 1974), the court finds it necessary to examine that issue in the instant case.

The power of a federal court is defined in Article III of the United States Constitution, which limits that power to only those matters constituting a case or controversy. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). When presented with an anticipatory challenge to a statute, as in the present case, the court must first be satisfied that the controversy is " 'real, substantial . . . between parties . . . a dispute definite and concrete.' " *International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 817–818 (5th Cir. 1979) citing *Babbitt v. UFW*, 442 U.S. 289, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) quoting *Railway Mail Association v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945).

Defendant raised the issue of "case or controversy" at the hearing for preliminary injunction relying heavily on *Rincon, supra.* Admittedly, *Rincon* is factually similar to

this case, and it did explicitly hold that a general threat of enforcement in the absence of previous arrests for ordinance violations did not meet the case or controversy requirement of the Constitution. *Id.* at 6.

The Fifth Circuit, however, interprets the *Rincon* decision as illustrative on another facet of the justiciability analysis—namely the "non-jurisdictional, 'policy considerations' underlying justiciability and not to the existence of a case or controversy." *Eaves, supra* at 818. Consequently, the court concludes that *Rincon* does not state the test to be followed in this Circuit. As enunciated in *Eaves*, the court must focus on the plaintiff's interest in engaging in conduct, arguably legal but prohibited by law (*id.* at 819) to be certain that it is not motivated strictly to thwart the enforcement of the challenged law. In this case, the court concludes that plaintiff earnestly wishes to engage in the bingo business in order to raise revenue for the Tribe. The court is confident that plaintiff's goal is not merely "the extirpation of unconstitutional measures." [4] *Id.*

The second area of inquiry "[T]he nonjurisdictional, 'policy' component of justiciability" *Eaves, supra*, at 821, also requires that this court accept jurisdiction of this case. This case seems classically appropriate for an anticipatory challenge. The Tribe seeks to engage in a business which the local sheriff has indicated may be in violation of state law, and which may result in criminal prosecutions because of his testified intention to enforce state law. In this regard, plaintiff needs only show a slight threat of prosecution. *Id.* citing *Babbitt v. UFW*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). For policy reasons, it is a sound exercise of judicial authority

---

(c) All persons involved in the conduct of guest games must be bonafide employees of the Tribe or the Contractor.

(d) No one under eighteen (18) years of age shall be allowed to play.

4. The court recognizes that this analysis usually arises in cases such as *Eaves* where a constitutional attack has been made. However, the analysis in *Eaves* is equally applicable here in determining whether an anticipatory challenge of *Fla.Stat.* § 849.093 can be considered by this court.

for the court to declare the rights of the parties before it, and to determine the Seminole Tribe's immunity from, or vulnerability to, the penal provisions of Florida's bingo law.

On a related issue, the court finds that its subject matter jurisdiction has been properly invoked pursuant to 28 U.S.C. § 1362, which provides:

"The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."

■ In *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) the Supreme Court upheld the District Court's jurisdiction over a suit by Indians to avoid state cigarette, sales tax and personal property tax. The Court so held even though 28 U.S.C. § 1341 provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such State." The court is of the opinion that the matter in controversy arises under laws of the United States, i. e., Public Law 280, and thus is properly brought as a declaratory judgment action. 28 U.S.C. § 2201–2202.[5]

■ The court begins its analysis with the general proposition that Indian nations have always been dealt with exclusively by the Federal Government. *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). This proposition has been grounded on the principle that Indian nations were "distinct political communities, having territorial boundaries, within which their authority is exclusive . . ." *Id.* at 168, 93 S.Ct. at

1260 citing *Worcester v. Georgia*, 6 Pet. 515, 557, 8 L.Ed. 483 (1832). The Federal Government has long permitted Indian Nations largely to govern themselves, free from state interference. *Warren Trading Post Co. v. Arizona Tax Comm'n*, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965). "State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply." *McClanahan, supra* 411 U.S. at 170–171, 93 S.Ct. at 1261 quoting U.S. Dept. of the Interior, Federal Indian Law 845 (1958).

In the case before the court, it must be determined if the grant of jurisdiction to the states by operation of Public Law 280, 67 Stat. 588, 589, codified at 28 U.S.C. § 1360, 18 U.S.C. § 1162, has permitted the State of Florida to enforce its bingo statute on Seminole Land. As a preliminary matter, however, the court will have to determine if Florida's statute can be classified as criminal/prohibitory or civil/regulatory.

The law of Florida concerning gambling activities is clear. They are generally forbidden by the State Constitution. *Fla. Const.* Art. 10 § 7 provides:

"Lotteries, other than the types of pari-mutuel pools authorized by law `. . . are hereby prohibited in this state."

Likewise most gambling activities are prohibited by Chapter 849 of the Florida Statutes.

In construing that article of the Constitution, the Florida Supreme Court has noted that its effect prohibits the legislature from legalizing any gambling device that would constitute a lottery, but that the legislature has inherent power to prohibit or regulate all other forms of gambling. In the exercise of this power, the legislature has permitted bingo with certain limitations. *Carroll v. State*, 361 So.2d 144 (Fla. 1978). Those limitations on bingo are found in *Fla.Stat.* § 849.093, and have been described

---

5. On the authority of *Quinault Tribe of Indians v. Gallagher*, 368 F.2d 648 (9th Cir. 1966) *cert. den.* 387 U.S. 907, 87 S.Ct. 1684, 18 L.Ed.2d 626, the court concludes that there is no jurisdictional basis for this lawsuit under 42 U.S.C. § 1983; 28 U.S.C. § 1343(3). The court in

*Quinault* construed Public Law 280 as conferring no rights for Indians, but rather as one concerned with state-federal relations. Thus plaintiffs could not establish any right, privilege or immunity secured by a law of the United States as required by § 1983.

by the Florida Supreme Court as "stringent limitations against abuse." *Id.* at 147. That same court also wrote:

"The discretion of the legislature when exercised for the public welfare in selecting the subjects of police *regulations* and in determining the nature and extent of such *regulation* is limited only by the requirements of fundamental law that the *regulations* shall not invade private rights secured by the Constitution." (emphasis added) *Id.*

In reviewing Florida's statutory scheme, it is evident that § 849.093 does create an exception to otherwise forbidden activity by imposing certain restrictions or regulations. The court also notes that violations of that section are punishable as misdemeanors, and eventually, as third-degree felonies.[6]

The court finds the case of *United States v. Marcyes*, 557 F.2d 1361 (9th Cir. 1977) particularly helpful in this determination. In that case, defendants were convicted in a federal court of selling fireworks on Indian land in the State of Washington. The charge was founded on a Washington state statute made enforceable in the federal courts by the Assimilative Crimes Act. 18 U.S.C. § 13. The question presented there was whether the Assimilative Crimes Act incorporated only the criminal/prohibitory laws of a State or also the penal provisions of civil/regulatory statutes. Also presented for decision was the classification of Washington's fireworks law.

Without elaborate analysis, the Ninth Circuit categorized the Washington fireworks law as criminal rather than civil. It did so relying primarily on the state's intent "to prohibit the general possession and/or sale of dangerous fireworks" *Marcyes, supra* at 1364. It found the law was "not primarily a licensing law." *Id.* The court also found it significant that the law was not intended to raise revenue and to regulate conduct through licensing, but rather was an exercise of the state's police power

"to promote the safety and health of all citizens." *Id.* Another significant point of the *Marcyes* case was the court's concern that the Assimilative Crimes Act was intended to fill in gaps on federal enclaves where Congress had not passed specific federal statutes. The court wrote, "Our holding today upholds this policy by insuring that Washington's fireworks laws will be uniformly applied to all citizens—white or non-white, on or off the reservation." *Id.* at 1364–65.

The circumstances in Florida are, in some respects, similar. The Legislature has clearly spoken that gambling is not in the best interests of Florida residents' health, safety, welfare, and morals. The Supreme Court of Florida has acknowledged that message. In *Carroll*, the court described lotteries as a "vice" capable of infesting a whole community with the "mischief or nuisance of gambling." *Id.* at 147.

■ Nonetheless, the court makes a distinction between bingo operations conducted by a qualified group and the obvious dangers of fireworks, *Marcyes, supra.* For one, because the Indian activity in Washington involved the sale of a dangerous product which could be carried off the reservation—and a product particularly perilous to children—it is readily apparent why that law was construed to be prohibitory. By contrast, any bingo operation will be confined to Indian land. The court can take judicial notice that bingo is largely a senior-citizen pastime. Although some "ripple effects" of this operation may be felt beyond reservation boundaries, its geographically restricted nature together with the statute's regulatory scheme require a civil/regulatory classification.

■ More importantly, the court discerns a decided distinction between the Florida Legislature's intent and that of the Washington Legislature. Washington sought to

**6.** The court cannot agree with plaintiff's assertion that simply because the penalty provisions of § 849.093 are identical to Florida's cigarette tax statute that it too is a civil regulatory statute as the cigarette tax scheme has been held

to be. *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). Nonetheless, it is significant that criminal penalties do not automatically render a statutory scheme prohibitory in nature.

prohibit the general possession and/or sale of dangerous fireworks. *Marcyes*, at 1364. It seems plain that Florida, in permitting bingo to be run by certain groups in a restricted manner, has acknowledged certain benefits of bingo and has chosen to regulate rather than prohibit.

Having made the determination that § 849.093 should be classified as a civil/regulatory scheme, it is a simpler task to determine if Congress has authorized Florida to impose its civil regulatory schemes on Indian land. The answer is clearly no. In *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976) the Court analyzed the breadth of civil jurisdiction conferred upon the states by Public Law 280.

The Court said:

"[S]ubsection (a) seems to have been primarily intended to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians . . . by permitting the courts of the States to decide such disputes . . .. With this as the primary focus . . . [the statute] authorizes application by the state courts of their rules of decision to decide such disputes." *Id.* at 383–384, 96 S.Ct. at 2108.

It was settled in *Itasca County* that Public Law 280 operated to make available state courts and rules of decision to adjudicate civil matters. It did not "confer general state civil regulatory control over Indian reservations." *Id.* Accordingly, by adopting *Fla.Stat.* § 285.16, Florida could assume no more jurisdiction than was ceded to it by Public Law 280.

The court must note that the question presented in this case is a close one. As argued by defendant, all laws do regulate, civil and criminal. Many regulate by prohibiting certain conduct. However, in view of the Congressional policy enunciated in Public Law 280, the court must resolve a close question in favor of Indian sovereignty.

"[N]othing in its legislative history remotely suggests that Congress meant the Act's extension of civil jurisdiction to the States should result in the undermining or destruction of such tribal governments as did exist and a conversion of the affected tribes into little more than " 'private, voluntary organizations,' " (citations omitted)—a possible result if tribal governments and reservation Indians were subordinated to the full panoply of civil regulatory powers, including taxation, of state and local governments." *Itasca County* 426 U.S. at 388, 96 S.Ct. at 2110.

The court further notes this policy may not be circumvented by a state's enforcement of penal provisions in otherwise regulatory schemes.

Accordingly, it is hereby

ORDERED AND ADJUDGED that plaintiff's motion for summary judgment is hereby granted. It is

FURTHER ORDERED AND ADJUDGED that defendant's motion for summary judgment is hereby denied. It is

FURTHER ORDERED AND ADJUDGED that defendant, Broward Sheriff Robert Butterworth and all deputies or employees of the Sheriff, are hereby permanently enjoined from enforcing *Fla.Stat.* § 849.093 on Seminole Indian land.