The Honorable Thomas W. Vaughan Hendry County Sheriff Post Office Box 579 LaBelle, Florida 33935
Dear Sheriff Vaughan:
You ask substantially the following question:
Does the state have any jurisdiction on the Seminole Indian reservation?
In sum:
The state has assumed jurisdiction over criminal offenses committed by or against Indians and other persons on the reservation, and such laws are effective and may be enforced on Indian reservations in the same manner as elsewhere throughout the state so long as they are not in conflict with federal law. While civil jurisdiction has also been assumed by the state, such jurisdiction has been construed as jurisdiction over private civil litigation involving reservation Indians in state courts rather than a grant of civil regulatory authority.
According to your letter, as Sheriff of Hendry County you have been asked by several persons if your agency may respond to calls or complaints on the reservation. You do not, however, specify the nature of such complaints or the type of jurisdiction you wish to exercise. Accordingly, my comments must be general in nature.
It is generally recognized that state laws do not apply to tribal Indians on Indian reservations unless Congress has granted such authority.[1] However, as the courts have recognized, "notions of Indian sovereignty have been adjusted to take account of the State's legitimate interests in regulating the affairs of nonIndians. "[2] Thus, the courts have upheld the assertion of state sovereignty to subject non-Indians and non-Indian property located on Indian reservations to regulation provided that Indians, Indian activities, or Indian property are not unduly burdened or tribal self-rule is not frustrated and such regulation is not prohibited by federal law.[3]
When only the on-reservation activities of Indians are involved, however, state law is generally inapplicable in the absence of the federal government granting such authority. With the enactment of Public Law 83-280 (hereafter Public Law 280),[4] Congress provided a method for the states to assume civil and criminal jurisdiction over reservation Indians. Sections 2 and 4 of Public Law 280 granted certain states the right to exercise criminal jurisdiction and limited civil jurisdiction over Indian tribes.[5]
Section 7 of Public Law 280, which authorized the remaining states to assume certain civil and criminal jurisdiction by affirmative legislative action, provided:
The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State in assumption thereof.
Pursuant to the above authority, the Florida Legislature enacted section 285.16, Florida Statutes, which provides:
(1) The State of Florida hereby assumes jurisdiction over criminal offenses committed by or against Indians or other persons within Indians reservations and over civil causes of actions between Indians or other persons or to which Indians or other persons are parties rising within Indian reservations. (2) The civil and criminal laws of Florida shall obtain on all Indian reservations in this state and shall be enforced in the same manner as elsewhere throughout the state.[6]
Although section 7 of Public Law 280 was repealed in 1968,[7] any cessions of jurisdiction made pursuant to section 7 prior to its repeal were not affected.
In Bryan v. Itasca County, Minnesota,[8] the United States Supreme Court held that the extension of the state's civil jurisdiction to Indian reservations was intended primarily to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians and between Indians and other private citizens. The Court construed section 4 of Public Law 280 as a grant only of jurisdiction over private civil litigation involving reservation Indians in state courts but did not extend to general civil regulatory authority. As the Court stated, "if Congress in enacting Pub.L. 280 had intended to confer upon the States general civil regulatory powers, including taxation, over reservation Indians, it would have expressly said so."[9]
After Bryan, the courts examined the nature of the statute sought to be enforced to determine whether a state's enforcement power was properly exercised. In Seminole Tribe of Florida v. Butterworth,[10] the Seminole Indian Tribe of Florida sued to enjoin the enforcement of a state statute restricting bingo operations to charitable organizations. The district court held that by adopting section 285.16, Florida Statutes, "Florida could assume no more jurisdiction than was ceded to it by Public Law 280."[11] Citing Bryan, the court declared section 849.093, Florida Statutes (1979), to be civil/regulatory in nature rather than criminal/prohibitory and thus unenforceable against the Seminoles. The Fifth Circuit, on appeal, affirmed the lower court, holding that "the mandate from the Supreme Court is that states do not have general regulatory powers over the Indian tribes."[12]
Adopting the analysis in Butterworth, the Supreme Court in California v. Cabazon Band of Mission Indians,[13] stated:
[I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.
Accordingly, barring any retrocession by the Florida Legislature to the federal government pursuant to 25 U.S.C. § 1323, the laws of the state govern criminal offenses committed by or against Indians on the reservation as they do elsewhere in Florida to the extent not in conflict with federal law. Although the state has been granted civil jurisdiction, such authority relates to private civil litigation in the state courts and not to civil regulatory authority.
Thus, while the state and, accordingly, the sheriff do not have jurisdiction on Indian reservations except to the extent that such jurisdiction has been granted by federal law, the state has been granted criminal jurisdiction over criminal offenses committed by or against Indians or other persons within the Indian reservation. Such jurisdiction "shall be enforced in the same manner as elsewhere throughout the state."[14] Pursuant to section 30.15, Florida Statutes, the sheriff is the conserva-tor of the peace in the county. This office has previously stated that the jurisdiction of the sheriff is countywide and overlaps that of municipal police within a municipality.[15]
Section 285.17, Florida Statutes, creates a special improvement district for each of the areas contained within the reservations set aside for the Seminole and Miccosukee Tribes. Section 285.18, Florida Statutes, designates the respective governing bodies of the Seminole Tribe of Florida and the Miccosukee Tribe as the governing bodies of the special districts created by section285.17.
Among the powers that may be exercised by the governing bodies of such special improvement districts is the power to employ personnel to exercise law enforcement powers, including the investigation of violations of any of the criminal laws of the state occurring on the reservations over which the state has assumed jurisdiction pursuant to section 285.16.[16] Such law enforcement personnel are considered to be peace officers and
shall have the authority to bear arms, make arrests, and apply for, serve, and execute search warrants, arrest warrants, capias, and other process of the court, and to enforce criminal and noncriminal traffic offenses, within their respective special improvement districts.[17]
While section 285.18(2)(c), Florida Statutes, provides for the employment of law enforcement personnel by the special improve-ment district to exercise law enforcement functions, including the investigation of violations of the criminal laws of this state, I cannot conclude that such provisions grant such law enforcement personnel exclusive jurisdiction. Rather the sheriff and the special improvement district law enforcement personnel would appear to have concurrent jurisdiction, similar to that exercised by the sheriff and municipal law enforcement agencies within the incorporated municipality, over the enforcement of the state's criminal laws that may be enforced on the reservation by virtue of federal law and section 285.16, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, e.g., McClanahan v. State Tax Commission of Arizona,411 U.S. 164 (1973).
[2] 411 U.S. at 171.
[3] For a discussion of caselaw on this issue, see, Op. Att'y Gen. Fla. 87-49 (1987). Based upon a consideration of the cases cited therein, this office concluded that a private, non-Indian corporation seeking to construct a hospital on the Indian trust land to provide care to Indians and non-Indians must obtain a certificate of need and, to the extent that it provides care to non-Indians, must be licensed and regulated by the state pursuant to chapter 395, Florida Statutes, and the rules promulgated thereunder.
[4] Act of August 15, 1953, chapter 505, 67 Stat. 588-590.
[5] Sections 2 and 4 of Public Law 280 were respectively codified at 18 U.S.C. § 1162 and 28 U.S.C. § 1360.
[6] See, Op. Att'y Gen. Fla. 77-29 (1977) (section 285.16, Florida Statutes, does not include local ordinances within the assumption of jurisdiction contained in section 285.16, Florida Statutes, which is limited to civil and criminal laws of statewide application).
[7] See, section 403(b) of Public Law 90-284; Title IV,82 Stat. 79 (1968), 25 U.S.C. § 1323(b).
[8] 426 U.S. 373 (1976).
[9] Id. at 390. And see, Houghtaling v. Seminole Tribe of Florida,611 So.2d 1235 (Fla. 1993), in which the court held that although the state has jurisdiction over suits between Indians and other persons, it does not have jurisdiction in suits by other persons against an Indian Tribe, absent express waiver of tribal sovereign immunity. Accord, Askew v. Seminole Tribe, 474 So.2d 877 (Fla. 4th DCA 1985) (circuit court lacked subject matter jurisdiction in cases involving taxability of Indian ventures on Indian land), and Seminole Police Department v. Casadella, 478 So.2d 470 (Fla. 4th DCA 1985) (state courts lack subject matter jurisdiction in case involving wrongful arrest by tribal police). In both cases the court held that Public Law 280 and section 285.16, Florida Statutes, did not waive the Tribe's sovereign immunity.
[10] 491 F. Supp. 1015 (S.D.Fla. 1980), affirmed, 658 F.2d 310
(5th Cir. 1981), cert. denied, 455 U.S. 1020 (1982).
[11] 491 F. Supp. at 1020.
[12] 658 F.2d at 313. Cf., Serian v. State, 588 So.2d 251 (Fla. 4th DCA 1991) (non-Indian optometrist subject to prosecution for practicing optometry without a license even though practice located on Indian reservation since optometry requirements do not merely regulate conduct and produce revenue but rather serve to protect the public; therefore, statute is criminal/prohibitory and may be enforced).
[13] 480 U.S. 202, 209 (1987).
[14] Section 285.16(2), Fla. Stat. (1993).
[15] See, Op. Att'y Gen. Fla. 71-195 (1971) (respective rights, responsibilities, legal jurisdiction and limitations of a county sheriff and a municipal police department located in the same county have concurrent jurisdiction); and Op. Att'y Gen. Fla. 71-195A (1971) (each agency is authorized to conduct investigations without unnecessary intrusion from the other but two agencies should cooperate with each other, not because they are required to, but because it is a necessary condition to proper performance of each's duty to provide police protection).
[16] Section 285.18(2)(c), Florida Statutes.
[17] Section 285.18(2)(c)1., Fla. Stat. (1993). And see, s.285.18(2)(c)2., Fla. Stat. (1993) (such law enforcement personnel are entitled to the privileges, protection, and benefits of ss.112.19 and 870.05).